Michael R. Johnson (7070)
David H. Leigh (9433)
Elaine A. Monson (5523)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah 84111
Tel: (801) 532-1500
Email: mjohnson@rqn.com
Email: dleigh@rqn.com
Email: emonson@rqn.com

James T. Markus (*pro hac vice pending*)
William G. Cross (*pro hac vice pending*)
Lacey S. Bryan (*pro hac vice pending*)
**MARKUS WILLIAMS YOUNG &
HUNSICKER LLC**
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: wcross@markuswilliams.com
Email: lbryan@markuswilliams.com

*Proposed Counsel for the Debtor-In-Possession*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**MERIDIAN RESTAURANTS UNLIMITED, LC,** a Utah limited liability company,<br><br>Tax ID No. 22-3863257,<br><br>      Debtor-in-Possession. | Bankruptcy Case No. 23-20731-KRA<br><br>Chapter 11<br><br>Honorable Kevin R. Anderson<br><br>[Filed Electronically] |
| In re:<br><br>**LOVELOUD RESTAURANTS, L.C.,** a Utah limited liability company,<br><br>Tax I.D. No. 87-3720443,<br><br>      Debtor-in-Possession. | Bankruptcy Case No. 23-20732-KRA<br><br>Chapter 11<br><br>Honorable Kevin R. Anderson<br><br>[Filed Electronically] |

| | |
|---|---|
| In re: | Bankruptcy Case No. 23-20733-KRA |
| **AZM RESTAURANTS, L.C.**, a Utah limited liability company, | Chapter 11 |
| Tax I.D. No. 47-3131673, | Honorable Kevin R. Anderson |
| Debtor-in-Possession. | [Filed Electronically] |
| In re: | Bankruptcy Case No. 23-20736-KRA |
| **HR RESTAURANTS, L.C.**, a Utah limited liability company, | Chapter 11 |
| Tax I.D. No. 26-2114591, | Honorable Kevin R. Anderson |
| Debtor-in-Possession. | [Filed Electronically] |
| In re: | Bankruptcy Case No. 23-20737-KRA |
| **MR RESTAURANTS, L.C.**, a Utah limited liability company, | Chapter 11 |
| Tax I.D. No. 27-2405774, | Honorable Kevin R. Anderson |
| Debtor-in-Possession. | [Filed Electronically] |
| In re: | Bankruptcy Case No. 23-20738-KRA |
| **NDM RESTAURANTS, L.C.**, a Utah limited liability company, | Chapter 11 |
| Tax I.D. No. 47-1791172, | Honorable Kevin R. Anderson |
| Debtor-in-Possession. | [Filed Electronically] |

4877-7521-9284, v. 1

In re:

**NKS RESTAURANTS, L.C.**, a Utah limited
liability company,

Tax I.D. No. 82-3393400,

      Debtor-in-Possession.

Bankruptcy Case No. 23-20739-KRA

Chapter 11

Honorable Kevin R. Anderson

[Filed Electronically]

---

## MOTION FOR ENTRY OF INTERIM ORDER AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM ON AN INTERIM BASIS, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, (D) SETTING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF

Debtors Meridian Restaurants Unlimited, L.C., a Utah Limited liability company ("Meridian"), debtor-in-possession in the chapter 11 case of In re Meridian Restaurants Unlimited, L.C., case no. 23-20731-KRA (the "Meridian Case"), Loveloud Restaurants, L.C. ("Loveloud"), debtor-in-possession in the chapter 11 case of In re Loveloud Restaurants, L.C., case no. 23-20732-KRA (the "Loveloud Case"), debtor AZM Restaurants, L.C. ("AZM"), debtor-in-possession in the chapter 11 case of In re AZM Restaurants, L.C., case no. 23-20733-KRA (the "AZM Case"), debtor HR Restaurants, L.C. ("HR"), debtor-in-possession in the chapter 11 case of In re HR Restaurants, L.C., case no. 23-20736-KRA (the "HR Case"), debtor MR Restaurants, L.C. ("MR"), debtor-in-possession in the chapter 11 case of In re MR Restaurants, L.C., case no. 23-20737-KRA (the "MR Case"), debtor NDM Restaurants, L.C. ("NDM"), debtor-in-possession in the chapter 11 case of In re NDM Restaurants, L.C., case no. 23-20738-KRA (the "NDM Case"),

and debtor NKS Restaurants, L.C. ("NKS"),[1] debtor-in-possession in the chapter 11 case of In re

NKS Restaurants, L.C., case no. 23-20739-KRA (the "NKS Case"),[2] by and through their

undersigned proposed counsel, hereby requests the Court enter an order, substantially in the form

filed herewith (the "Interim Order"): (i) authorizing, but not directing, on an interim basis the

continued use of the Debtors' cash management system (the "Cash Management System"), bank

accounts and business forms under the existing Cash Management System, honor certain

prepetition obligations related thereto; (ii) waiving certain requirements of 11 U.S.C. § 345(b) and

operating guidelines set forth in the Operating Guidelines for Chapter 11 Cases by the Office of

the United States Trustee (the "U.S. Trustee Guidelines"); (iii) scheduling a final hearing ("Final

Hearing") for entry of an order granting the relief requested herein on a final basis (the "Final

Order"); and (iv) granting related relief.   In support of this motion, the Debtors state as follows:[3]

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of Utah has jurisdiction over

this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the

meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The

statutory bases for the relief requested herein includes §§ 105(a), 345, 363, 503(b), 1107 and 1108

and Fed. R. Bankr. P. 6003 and 6004.

---

[1] Meridian, Loveloud, AZM, HR, MR, NDM, and NKS are each a "Debtor" and collectively referred to herein as the "Debtors".

[2] The Loveloud Case, AZM Case, HR Case, MR Case, NDM Case, and NKS Case are collectively referred to herein as the "Subsidiary Cases".

[3] Unless otherwise specified, all references herein to "Section," "§," "Bankruptcy Code" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

4877-7521-9284, v. 1

**Background**

2.        On March 2, 2023, (the "Petition Date"), the Debtors separately filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court").

3.        The Debtors are affiliates under the meaning of § 101(2).  MR, HR, NDM, NKS and AZM are wholly owned subsidiaries of Loveloud; Loveloud is the wholly owned subsidiary of Meridian.[4]

4.        The Debtors are authorized to operate their business and manage their properties as debtors-in-possession under §§ 1107(a) and 1108. No creditors' committee is appointed in the Debtors' chapter 11 cases by the Office of the United States Trustee, nor has any trustee or examiner been requested or appointed.

5.        A description of the Debtors' business, the reasons for filing the chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set more fully described in the forthcoming *Declaration of James Winder in Support of First Day Relief* (the "Winder Declaration"), which the Debtors hereby adopt and incorporate as if fully set forth herein.

---

[4] Contemporaneously with the filing of this motion, the Debtors separately filed a *"), Motion for Entry of Interim Order: (A) Directing Joint Administration and Procedural (But Not Substantive) Consolidation of Related Chapter 11 Cases; (B) Setting a Final Hearing; and (C) Granting Related Relief*, requesting the Court enter an order directing the joint administration of their chapter 11 cases and consolidation thereof for procedural purposes only, with all filings to take place in the Meridian chapter 11 case, case no. 23-20731-KRA.

{Z0411879/1 }                                                                 5

4877-7521-9284, v. 1

## The Cash Management System

### I.    Overview

6.    The Debtors currently operate one-hundred sixteen (116) Burger King restaurants (the "Restaurants") under various franchise agreements, lease agreements, and other contracts and documents supporting the franchise operations.  The Debtors operate the Restaurants in nine (9) states, including Utah, Montana, Wyoming, North Dakota, South Dakota, Minnesota, Nebraska, Kansas, and Arizona.  The franchise restaurants are operated by Debtors AZM, HR, MR, NDM, and NKS.  Other non-Burger King branded restaurants are operated by non-debtor subsidiaries of Meridian and Loveloud.

7.    The Debtors' Cash Management System, a diagram of which is attached hereto as **Exhibit 1**, is similar to the centralized cash management systems used by other comparably sized companies to manage cash flow.  The Debtors use their Cash Management System in the ordinary course to receive, transfer and disburse funds and to facilitate payroll, operating expenses, taxes, cash monitoring, forecasting, and reporting.  The Debtors' financial personnel manage the Cash Management System from the Debtors' headquarters in South Ogden, Utah, and implement cash management controls for entering, processing, and releasing funds.  Additionally, the Debtors' corporate accounting personnel regularly reconcile the Debtors' books and records to ensure that all transfers are accounted for properly.

8.    The Cash Management System facilitates the timely and efficient collection, management, and disbursement of funds and allows the Debtors to accurately track cash flow on behalf of the entire business operation.

4877-7521-9284, v. 1

9.       To comply with the U.S. Trustee Guidelines, the Debtors propose herein to open new debtor-in-possession bank accounts to make expense and payroll disbursements, while maintaining the currently existing bank accounts for collection of cash and non-cash payments and revenue from the Restaurants.  Because of the disruption that would result if the Debtors were forced to close their existing bank accounts, it is critical that these aspects of the existing Cash Management System remain in place. In this scenario, all revenues and deposits would continue to flow into the current bank accounts maintained by the Debtors, all revenue would be swept into new debtor-in-possession accounts and all future disbursements will be disbursed from the new debtor-in-possession accounts.  This process will ensure that the U.S. Trustee can appropriately monitor all disbursements.

## II.    Collection Process.

10.       On a routine, daily basis, customers of the Restaurants purchase food and beverage from the Restaurants with cash.  Cash from each Restaurant operated by AZM, HR, MR, NDM, and NKS is deposited into Smart Safes in each Restaurant.  The Smart Safes in each Restaurant transmit the deposited cash to Wells Fargo Bank ("Wells Fargo"), and the bank credits the Meridian Operating account, *6210, at Wells Fargo Bank (the "Wells Operating Account").  Once a week, Garda World (armored transport) picks up the cash deposits from the Restaurants and delivers them to Wells Fargo to reconcile against the transmitted deposits.  Each day, Meridian effects an EFT transfer from the Wells Operating Account to an account at Zions Bancorporation, N.A. ("Zions Bank"), Deposit account, *1415 (the "Zions Deposit Account") (together with the Wells Operating Account, the "Collections Accounts").   The transfers and the Collections

Accounts described above are reflected on the Cash Management System flowchart attached hereto as Exhibit 1.

11.     On a routine, daily basis, customers of the Restaurants also purchase food and beverage from the Restaurants using non-cash forms of payment, including debit cards and credit cards.  Amounts received from customers at the Restaurants via non-cash forms of payment are credited directly to the Zions Deposit Account, within three to five days after the non-cash transactions are made at the Restaurant.  These transfers are reflected on the Cash Management System flowchart attached hereto as Exhibit 1.

12.     The entirety of the Debtors' revenues, from both cash and non-cash sources, flows from the Restaurants operated by AZM, HR, MR, NDM, and NKS into the Collection Accounts. On a daily basis, approximately more than $500,000 is transferred into and out of the Collection Accounts.

**A.  Disbursement Process.**

13.     Under the existing Cash Management System, in addition to the Zions Deposit Account, the Debtors currently maintain two other bank accounts at Zions Bank:  Disbursement Checking account, *2126 (the "Zions Disbursement Account"); and Payroll Checking account, *2118 (the "Zions Payroll Account").  Currently, to make disbursements, including payment of accounts payable, payroll and operating expenses, the necessary funds are transferred by the Debtors' financial personnel from the Zions Deposit Account by automatic or manual electronic transfers to either the Zions Disbursement Account or the Zions Payroll Account.  These transfers and accounts are reflected on the Cash Management System flowchart attached hereto as Exhibit 1.

4877-7521-9284, v. 1

14.     Generally, the Zions Disbursement Account is used to pay the operating expenses, debt payments, utilities, and taxes for each of the Debtors.  These expenses paid from the Zions Disbursement Account are initiated by the Debtors' financial personnel and paid to vendors and third parties via electronic payments.  Some vendors and third parties are paid by Corpay, a third-party payment processor, who automatically debits amounts necessary to pay expenses from Zions Disbursement Account.

15.     Generally, Zions Payroll Account is used to pay employee wages, benefits, payroll taxes, and 401(k) and other withholding payments.  Payroll periods run Monday through Sunday for two weeks, and payroll is paid every other week on Friday.  Payroll is submitted to Paylocity, the Meridian Debtors' third-party payroll processor.  For example, a recent payroll period ran from Monday, February 6 through Sunday February 19, 2023; the payroll amounts were submitted to Paylocity on Wednesday, February 22, and employees are paid on Friday, February 24, 2023.  All employees of the Debtors are paid via the Zions Payroll Account; employees of Meridian are paid by Meridian, and employees of other entities are paid by those entities (e.g., Restaurant employees of AZM are paid by AZM), but the funds come from the Zion Payroll Account.  Wages paid to non-Meridian employees are automatically recorded to those other Debtor entities as Intercompany Transactions (described below).  The Zions Payroll Account is also used to fund withholding obligations, including, but not limited to, federal, state and local income taxes, Social Security and Medicare taxes.  Paylocity submits the filings and payments for federal, state and local taxes associated with payroll.

### III.    Compliance with U.S. Trustee Guidelines on Authorized Depositories.

16.    Both Wells Fargo and Zions Bank are designated as authorized depositories by the Office of the United States Trustee for Region 19 (the "U.S. Trustee").  Additionally, both Wells Fargo and Zions Bank are well-capitalized and insured by the Federal Deposit Insurance Corporation, and therefore the Debtors can maintain all of their bank accounts without jeopardizing any party in interest.  The new debtor-in-possession accounts to be opened by the Debtors will be through Zions Bank.

### IV.    Bank Fees.

17.    In the ordinary course, Wells Fargo and Zions Bank charge, and the Debtors pay, honor, or allow the deduction from the appropriate account, certain service charges and other fees, costs, and expenses (collectively, the "Bank Fees").  These fees are generally paid in arrears.  To maintain the integrity of their Cash Management System, the Debtors request authority to pay any prepetition Bank Fees for prepetition transactions that are charged postpetition and to continue to pay the Bank Fees in the ordinary course postpetition.  The Debtors also request that Wells Fargo and Zions Bank be authorized to chargeback returned items to the respective accounts, irrespective of whether the applicable sale transaction occurred before, on, or subsequent to the Petition Date, in the ordinary course.

### V.    Business Forms.

18.    As part of their Cash Management System, the Debtors utilize various preprinted business forms (the "Business Forms") in the ordinary course.  To minimize expenses to their estates and avoid confusion during the pendency of these chapter 11 cases, the Debtors request that the Court authorize the Debtors' continued use of all existing preprinted correspondence and

business forms (including, without limitation, letterhead and preprinted checks) as such forms were in existence immediately before the Petition Date, without reference to the Debtors' status as debtors in possession, rather than requiring the Debtors to incur the expense and delay of ordering entirely new business forms.  If the Debtors need to order additional business forms postpetition, the Debtors will include the required debtor-in-possession designations.

## VI.    Intercompany Transactions.

19.    In the ordinary course of business, the Debtors routinely engage in certain intercompany financial transactions by and between different Debtor entities (collectively, the "Intercompany Transactions").[5]  The Intercompany Transactions may arise from one Debtor entity's payment of accounts payable, or payroll owed by another Debtor or one Meridian Debtor entity's receipt of accounts receivable payments due to another Meridian Debtor.  At any given time, as a result of the Intercompany Transactions, there may be claims owing by, or owed from, one Debtor to another.

20.    The Intercompany Transactions are essential components of the Debtors' operations and Cash Management System.  Any interruption of the Intercompany Transactions and would severely disrupt the Debtors' operations and result in great harm to the Debtors' estates and their stakeholders.  Accordingly, herein the Debtors seek authority – and, to the extent applicable, relief from the automatic stay – to continue the Intercompany Transactions in the ordinary course of business on a postpetition basis, in a manner substantially consistent with the

---

[5]  This Motion provides an overview of the Debtors' typical Intercompany Transactions.  The relief requested herein is applicable with respect to all Intercompany Transactions and is not limited to those Intercompany Transactions described in this motion.  To the extent that there are any outstanding prepetition obligations related to Intercompany Transactions not described herein, the Debtors, out of an abundance of caution, seek authority to honor such obligations.

4877-7521-9284, v. 1

Debtors' past practices.  The Debtors also request authority to continue any netting or setoff practices postpetition in the ordinary course.  If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtors' operations would be disrupted unnecessarily to the detriment of the Debtors, their creditors, and other stakeholders.

## Relief Requested

21.     By this motion, pursuant to §§ 105(a), 345, 363 and 503(b) and Fed. R. Bankr. P. 6003 and 6004, the Debtors request entry an Interim Order, substantially in the form of proposed Interim Order filed herewith: (i) authorizing, but not directing, on an interim basis the continued use of the Debtors' Cash Management System, including bank accounts and Business Forms under the existing Cash Management System, and honor certain prepetition obligations related thereto; (ii) waiving certain requirements of 11 U.S.C. § 345(b) and operating guidelines set forth in the U.S. Trustee Guidelines; (iii) scheduling a Final Hearing on the relief requested herein and entry of a Final Order; and (iv) granting related relief.

## Basis For Relief Requested

**I.     Maintaining the Existing Cash Management System is Essential to Maximizing the Value of the Debtors' Estates.**

22.     The U.S. Trustee Guidelines has established operating guidelines for debtors-in-possession relating to cash management systems.  The U.S. Trustee Guidelines require the Debtors, as debtor-in-possession, to take certain actions with respect to its prepetition bank accounts for the U.S. Trustee to supervise the administration of the Chapter 11 case.  As described in the U.S. Trustee Guidelines, the requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition

payment of prepetition claims.  Under the U.S. Trustee Guidelines, the Debtors would be required, among other things, to: (a) close all existing bank accounts; (b) open new accounts designated as "debtor in possession" accounts; (c) make all post-petition disbursements by check; and (d) include the words "debtor in possession" and certain other information on all checks. *See* 28 U.S.C. § 586 and U.S. Trustee Guidelines.

23.    Courts have waived the requirements of the U.S. Trustee Guidelines recognizing they are often impractical and potentially detrimental to a debtor's postpetition business operations and restructuring efforts. *See, e.g., Official Comm. of Unsecured Creditors of the Columbia Gas Transmission Corp. v. Columbia Gas Sys. Inc. (In re Columbia Gas Sys. Inc.)*, 997 F.2d 1039, 1061 (3rd Cir. 1993) (finding requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."); *see also Southmark Corp. v. Grosz (In re Southmark Corp.)*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows debtor "to administer more efficiently its financial operations and assets").

24.    Bankruptcy courts in the Tenth Circuit have granted waivers from the requirements of the U.S. Trustee Guidelines, generally treating requests for such relief as a relatively routine matter. *See, e.g., In re Furrs Supermarkets, Inc.*, Case No. 01-10779 (JSS) (Bankr. D. N.M. Feb. 8, 2001); *In re Atna Resources, Inc., et al.*, Case No. 15-22848, Final Order Granting Debtors' Expedited Motion for a Final Order (A) Authorizing, but not directing, the Debtors to Maintain their Existing Bank Accounts, Cash Management System and Business Forms; (B) Waiving Investment and Deposit Requirements; and (C) Granting Related Relief [Doc. 85] (Bankr. D. Colo. November 23, 2015); *In re Fresh Produce Holdings, LLC, et al.*, Case No. 15-13485, Interim Order Authorizing (I) Continued Use of Existing Cash Management System, (II) Maintenance of

Existing Bank Accounts, and (III) Maintenance of Existing Investment Practices [Doc. 60] (Bankr.

D. Colo. April 10, 2015); *In re Midway Gold US Inc., et al*., Case No. 15-16835, Order Granting

Debtors' Expedited Motion for a Final Order (A) Authorizing, but not directing, the Debtors to

Maintain their Existing Bank Accounts, Cash Management System and Business Forms; (B)

Waiving Investment and Deposit Requirements; and (C) Granting Related Relief (Bankr. D. Colo.

June 25, 2015); *In re Red Eagle Oil, Inc.*, Case No. 11-20857, Order on Debtor's Motion Pursuant

to 11 U.S.C. §§ 345, 363, 364, 1107 and 1108 for an Order Authorizing Continued Use of the

Debtor's Existing Cash Management System and Business Forms [Doc. 99] (Bankr. D. Wyo.

August 23, 2011).

25.    Allowing the Debtors to utilize its Cash Management System as proposed herein is

entirely consistent with applicable provisions of the Bankruptcy Code. Section 363(c)(1)

authorizes debtors in possession to "use property of the estate in the ordinary course of business

without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of § 363(c)(1) is to provide

debtors in possession with the flexibility to engage in ordinary course transactions required to

operate their businesses, without unneeded oversight by the Debtor's creditors or having to obtain

court approval. *See, e.g., In re Lavigne*, 114 F.3d 379, 384 (2nd Cir. 1997); *In re Roth American,

Inc.,* 975 F.2d 949, 952 (3rd Cir. 1992).  The Debtors' ability to continue using the Cash

Management System falls within the parameters of § 363(c). *See, e.g., In re Charter Co.,* 778 F.2d

617, 621 (11th Cir. 1985) (holding that a debtor's request for authority to continue using its existing

cash management system is consistent with section 363(c)(1) of the Bankruptcy Code).

26.    To the extent that use of the existing Cash Management System is beyond the

ordinary course of the Debtors' business, such use is permitted by §§ 363(b)(1) and 105(a).  Section

363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) further provides that the Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a).

27.    Where there is a valid business justification for using property outside the ordinary course of business, the law presumes that, "in making a business decision the directors of a corporation acted on an informed basis, in good faith[,] and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.,* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

28.    Considering, however, the complex Cash Management System the Debtors have in place, which ties into the Debtors' existing corporate accounting and cash forecasting reporting, enforcement of certain provisions of the U.S. Trustee Guidelines during these chapter 11 cases would disrupt the Debtors' ability to continue business operations, efficiently administer their chapter 11 cases, and pursue a plan of reorganization.  Accordingly, the Debtors respectfully request the Court permit them to continue to allow them to utilize the existing Collections Accounts for the collection of revenue from Restaurants as they were maintained in the ordinary course before the Petition Date.

29.    To comply with the U.S. Trustee Guidelines, the Debtors will open new debtor-in-possession bank accounts at Zions Bank to make expense and payroll disbursements, while maintaining the Collections Accounts for collection of cash and non-cash payments and revenue from the Restaurants.  If the Debtors were forced to close the Collections Accounts, the disruption to their business operations would be severe and have a drastic impact on their ability to reorganize

4877-7521-9284, v. 1

under chapter 11.  All revenues and deposits would continue to flow into the current bank accounts maintained by the Debtors, all revenue would be swept into new debtor-in-possession accounts and all future disbursements will be disbursed from the new debtor-in-possession accounts.  This process will ensure that the U.S. Trustee can appropriately monitor all disbursements.

**II.**　　**Maintaining the Existing Cash Management System Will Not Harm Parties in Interest.**

30.　　The Debtors' continued use of their Cash Management System will facilitate the Debtors' transition into chapter 11 by, among other things, avoiding administrative inefficiencies, expenses, and distraction associated with disrupting this system and minimizing delays in the payment of postpetition obligations.  The Debtors respectfully submit that parties in interest will not be harmed by the Debtors' maintenance of their existing Cash Management System, specifically maintenance of the Collections Accounts and use of existing Business Forms, because the Debtors have implemented appropriate mechanisms to ensure that unauthorized payments will not be made on account of obligations incurred before the Petition Date.

31.　　Specifically, with the assistance of their advisors, the Debtors have implemented internal control procedures that prohibit payments on account of prepetition debts from the Zions Disbursement Account and Zions Payroll Account without the prior approval of the Debtors' managing officer, James Winder, and Treasurer Steven Smith.  In light of such protective measures, the Debtors submit that maintaining the Cash Management System as proposed in this motion is in the best interests of their estates and creditors.

### III.    Authorizing the Debtors to Continue Using Debtor and ACH/Wire is Warranted.

32.    The Debtors request the Court grant further relief from the U.S. Trustee Guidelines to the extent they require the Debtors to make all disbursements by check.  In particular, the U.S. Trustee Guidelines require that all receipts and all disbursements of estate funds must be made by check with a notation representing the reason for the disbursement.

33.    Under current operations and the existing Cash Management System, the Debtors write few to no checks for payment of goods, services, or employee wages; nearly all transactions in the Debtors' business operations are done via electronic transfer, debit, wire/ACH or other similar methods.  Further, nearly all amounts deposited into the Collections Accounts is disbursed through the Zions Disbursement Account and Zions Payroll Account.  If the Debtors' ability to conduct transactions by debit, wire/ACH or other similar methods is impaired, the Debtors day-to-day activities may be unnecessarily disrupted, and their estates will incur additional costs.

### IV.    Authorizing the Banks to Continue to Maintain, Service, and Administer the Bank Accounts in the Ordinary Course is Warranted.

34.    The Debtors respectfully request that the Court authorize Wells Fargo and Zions Bank to continue to maintain, service, and administer Collections Accounts as accounts of the Debtors as debtors in possession, without interruption and in the ordinary course.  In this regard, Wells Fargo and Zions Bank should be authorized to receive, process, honor, and credit all deposits, payments, and transfers into and between those accounts.  Except as authorized by the Court, the Debtors will instruct its financial institutions not to honor checks issued prior to the Petition Date.  The Debtors will continue to maintain strict records within the Cash Management

System to ensure no payments or transfers of funds are made not otherwise authorized by the Court.

35.    The Debtors further request that the Court authorize Wells Fargo and Zions Bank to accept and honor all representations from the Debtors as to which checks, drafts or ACHs/wires should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts or ACHs/wires are dated before or subsequent to the Petition Date. The Debtors also request that, to the extent Wells Fargo and Zions Bank honors a prepetition check or other item drawn on any account either: (a) at the direction of the Debtors; (b) in a good-faith belief that the Court has authorized such prepetition check or item to be honored; or (c) as a result of an innocent mistake made despite implementation of customary item handling procedures, that Wells Fargo and Zions Bank will not be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item honored postpetition.  The Debtors respectfully submit that such relief is reasonable and appropriate because Wells Fargo and Zions Bank may not be in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

36.    Moreover, the Debtors request that the Court authorize the Debtors to pay any prepetition Bank Fees for prepetition transactions that are charged postpetition and authorize the Bank to:  (a) continue to charge the Debtors the Bank Fees; and (b) charge-back returned items to the bank accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course.

Case 23-20731   Doc 18   Filed 03/03/23   Entered 03/03/23 14:35:25   Desc Main
Document    Page 19 of 26

**V.    The Court Should Authorize the Debtors to Continue Using Existing Business Forms.**

37.    To avoid disruption of the Cash Management System and unnecessary expense, the Debtors request authorization for the continued use of existing business forms (including, without limitation, preprinted checks) substantially in the form existing immediately before the Petition Date, without reference to their status as debtors in possession.  The Debtors submit that parties in interest will not be prejudiced if the Debtors are authorized to continue to use their business forms substantially in the forms existing immediately before the Petition Date.  Such parties will undoubtedly be aware of the Debtors' status as debtors in possession and, thus, changing business forms is unnecessary and would be unduly burdensome.  Once the Debtors have exhausted their existing supply of business forms, the Debtors will reorder business forms with the designation "Debtor in Possession" and the corresponding bankruptcy number on all such forms (including checks).  Requiring the Debtors to change existing Business Forms would unnecessarily distract the Debtors from their restructuring efforts and impose needless expenses on their estates, without any meaningful corresponding benefits.

**VI.    The Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in the Ordinary Course of Business.**

38.    The Debtors' funds move through the Cash Management System as described herein.  Intercompany Transactions are made between and among Debtors and certain non-Debtor

4877-7521-9284, v. 1

affiliate in the ordinary course as part of the Cash Management System.[6]  The Debtors track all

fund transfers in their accounting system and can ascertain, trace, and account for all Intercompany

Transactions.  The Debtors, moreover, will continue to maintain records of such Intercompany

Transactions.  If the Intercompany Transactions were to be discontinued, the Cash Management

System would be disrupted to the Debtors' and their estates' detriment.  Accordingly, the Debtors

respectfully submit that the continued performance of the Intercompany Transactions is in the best

interest of the Debtors' estates and their creditors and, therefore, the Debtors should be permitted

to continue such performance.

39.    To ensure each individual Debtor will not, at the expense of its creditors, fund the

operations of another entity, the Debtors respectfully request, pursuant to § 503(b)(1) of the

Bankruptcy Code, that all postpetition payments between or among a Debtor and another Debtor

on account of an Intercompany Transaction be accorded administrative expense status.[7]  This relief

will ensure that each entity receiving payments from a Debtor will continue to bear ultimate

repayment responsibility for such ordinary course transactions, thereby reducing the risk that these

transactions would jeopardize the recoveries available to each Debtor's respective creditors.

---

[6] Because the Debtors engage in Intercompany Transactions on a regular basis, the Debtors submit the Intercompany Transactions are ordinary course transactions within the meaning of § 363(c)(1) and thus do not require this Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  Moreover, the continued performance of the ordinary course Intercompany Transactions is necessary to ensure the Debtors' ability to operate their business as debtors in possession.

[7] Notwithstanding the administrative expense status requested for the Intercompany Transactions, all Debtors reserve their rights to dispute any Intercompany Transaction (or payment made on account of an Intercompany Transaction) on any ground, including the methodology for calculation of such transaction or payment, and to claw back or avoid such transactions and/or payments.

{Z0411879/1 }                                        20

4877-7521-9284, v. 1

## **The Requirements for Immediate Relief Under Fed. R. Bankr. P. 6003(b) are Satisfied**

40.     Bankruptcy Rule 6003 provides that the relief requested in this motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  One court has instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation.  *See Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3rd Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3rd Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle Cnty.*, 40 F.3d 645, 653-55 (3rd Cir. 1994).

41.     The Debtors submit that for the reasons already set forth herein, the granting relief requested in this motion is necessary to avoid immediate and irreparable harm to the Debtors. Authorizing the Debtors to maintain their Cash Management System as proposed and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases.  Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' ability to administer their estates at this critical juncture.  For the reasons discussed herein, the relief requested is necessary for the Debtors to continue business operations uninterrupted and preserve and maximize the value of the Debtors' estates for the benefit of all stakeholders.  Accordingly, the Debtors submit they have satisfied the "immediate and irreparable harm" requirement under Fed. R. Bankr. P. 6003 to support an immediate grant of the relief herein on an interim basis.

## Request For Waiver of Fed. R. Bankr. P. 6004(h)

42.     Fed. R. Bankr. P. 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for the estates. Accordingly, the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## Reservation of Rights

43.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as:  (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to § 365; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

4877-7521-9284, v. 1

## **Notice**

44.     The Debtors filed contemporaneously with this motion a *Ex Parte Motion for an Order Shortening Time for Notice of and the Hearing on: First Day Motions* (the "Motion for Expedited Hearing").  In the Motion for Expedited Hearing, the Debtors request the Court hold an expedited hearing on the Debtors' *Motion for Entry of Order: (I) Authorizing, but not Directing, the Debtors to (A) Pay Prepetition Employee Wages, Salaries and Other Compensation and (C) Continue Employee Benefits Programs and (II) Granting Related Relief* (the "Prepetition Wages Motion"), *Motion for Entry of Interim Order Authorizing the Debtors to (A) Continue to Operate Their Cash Management System on an Interim Basis, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, (D) Setting a Final Hearing, and (E) Granting Related Relief* (the "Cash Management Motion"), *Motion for Entry of Interim Order: (A) Directing Joint Administration and Procedural (But Not Substantive) Consolidation of Related Chapter 11 Cases; (B) Setting a Final Hearing; and (C) Granting Related Relief* (the "Joint Administration Motion"); and *Motion for Entry of Order Authorizing, but not Directing, the Payment of Certain Prepetition Taxes and Granting Related Relief* (the "Prepetition Taxes Motion").[8]

45.     Copies of the Motion for Expedited Hearing and this motion, will be served by hand delivery, over-night mail, facsimile, or email to: (i) the Office of the United States Trustee; (ii) the Debtors' consolidated list of 30 largest unsecured creditors; (iii) all secured creditors; (iv) the IRS

---

[8]   Debtors have not filed a Motion to Use Cash Collateral because no party has a perfected security interest in the Debtors, deposit accounts, account receivable or inventory.  City National Bank previously held a perfected security interest against the Debtors' personal property assets, however each of its UCC-1 financing statements lapsed prior to the filing of this case and thus no longer holds valid security interest in cash collateral.

{Z0411879/1 }                                          23

4877-7521-9284, v. 1

and other relevant government agencies; (v) all parties who have requested notice; and (vi) any party whose interest in property of the estate will be directly affected by the relief requested in this motion.

### Conclusion

WHEREFORE**,** the Debtors respectfully request that this Court enter an Order, substantially in the form of proposed Interim Order filed herewith: (i) authorizing, but not directing, on an interim basis the continued use of the Debtors' Cash Management System, including bank accounts and business forms under the existing Cash Management System, and honor certain prepetition obligations related thereto; (ii) waiving certain requirements of § 345(b) and operating guidelines set forth in the U.S. Trustee Guidelines; (iii) scheduling a Final Hearing on the relief requested herein and entry of a Final Order; (iv) granting related relief; and (v) such further and other relief as the Court finds necessary and appropriate under the circumstances.

4877-7521-9284, v. 1

Dated: March 3, 2023

Respectfully submitted,

RAY QUINNEY & NEBEKER P.C.


By: */s/ Michael R. Johnson*
Michael R. Johnson (7070)
David H. Leigh (9433)
Elaine A. Monson (5523)
36 South State Street, 14th Floor
Salt Lake City, Utah 84111
Tel: (801) 532-1500
Email: mjohnson@rqn.com
Email: dleigh@rqn.com
Email: emonson@rqn.com

*Proposed Counsel for the Debtor-In-Possession*

-- and --

MARKUS WILLIAMS YOUNG & HUNSICKER LLC

By: */s/ William G. Cross*
James T. Markus *(pro hac vice pending)*
William G. Cross *(pro hac vice pending)*
Lacey S. Bryan *(pro hac vice pending)*
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: wcross@markuswilliams.com
Email: lbryan@markuswilliams.com

*Proposed Counsel for the Debtor-In-Possession*

4877-7521-9284, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that March 3, 2023 I electronically filed the foregoing **MOTION FOR ENTRY OF INTERIM ORDER AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM ON AN INTERIM BASIS, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, (D) SETTING A FINAL HEARING, AND (E) GRANTING RELATED RELIEF** with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system.  I further certify that the parties of record in this case, including the United States Trustee, who are registered CM/ECF users will be served through the CM/ECF system.

/s/  Carrie Hurst

4877-7521-9284, v. 1