| | |
|---|---|
| Michael R. Johnson (7070) | James T. Markus |
| David H. Leigh (9433) | William G. Cross |
| Elaine A. Monson (5523) | Lacey S. Bryan |
| **RAY QUINNEY & NEBEKER P.C.** | **MARKUS WILLIAMS YOUNG &** |
| 36 South State Street, 14th Floor | **HUNSICKER LLC** |
| Salt Lake City, Utah 84111 | 1775 Sherman Street, Suite 1950 |
| Tel: (801) 532-1500 | Denver, Colorado 80203-4505 |
| Email: mjohnson@rqn.com | Telephone (303) 830-0800 |
| Email: dleigh@rqn.com | Facsimile (303) 830-0809 |
| Email: emonson@rqn.com | Email: jmarkus@markuswilliams.com |
| | Email: wcross@markuswilliams.com |
| | Email: lbryan@markuswilliams.com |

*Proposed Counsel for the Debtor-In-Possession*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>MERIDIAN RESTAURANTS UNLIMITED, LC; LOVELOUD RESTAURANTS, LC; AZM RESTAURANTS, LC; HR RESTAURANTS, LC; MR RESTAURANTS, LC; NDM RESTAURANTS, LC; and NKS RESTAURANTS, LC,<br><br>Debtors-in-Possession. | Bankruptcy Case No. 23-20731-KRA<br>Bankruptcy Case No. 23-20732-KRA<br>Bankruptcy Case No. 23-20733-KRA<br>Bankruptcy Case No. 23-20736-KRA<br>Bankruptcy Case No. 23-20737-KRA<br>Bankruptcy Case No. 23-20738-KRA<br>Bankruptcy Case No. 23-20739-KRA<br><br>Chapter 11<br><br>Judge Kevin R. Anderson<br><br>**Jointly Administered Under Bankruptcy Case No. 23-20731-KRA**<br><br>[Filed via ECF] |

# MOTION FOR ENTRY OF INTERIM ORDER: (A) APPROVING ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS; (B) ESTABLISHING PROCEDURES FOR RESOLVING OBJECTIONS BY UTILTIY PROVIDERS; (C) PROHIBITING UTILITY PROVIDERS FROM DISCONTINUING, ALTERING OR REFUSING SERVICE; (D) SCHEDULING A FINAL HEARING; AND (E) GRANTING RELATED RELIEF

Debtors Meridian Restaurants Unlimited, L.C. ("Meridian"), Loveloud Restaurants, L.C. ("Loveloud"), AZM Restaurants, L.C. ("AZM"), HR Restaurants, L.C. ("HR"), MR Restaurants, L.C. ("MR"), NDM Restaurants, L.C. ("NDM"), and NKS Restaurants, L.C. ("NKS") (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases,[1] by and through their undersigned proposed counsel, hereby moves, under 11 U.S.C. §§ 105(a), 363(b) and 366, for entry of an order, substantially in the form of proposed order filed herewith (the "Interim Utilities Order"): (i) approving adequate assurance of payment to utility providers; (ii) establishing procedures for resolving objections by utility providers; (iii) prohibiting utility providers from discontinuing, altering or refusing service; (iv) scheduling a final hearing ("Final Hearing") for entry of an order granting the relief requested herein on a final basis (the "Final Utilities Order"); and (iv) granting related relief. In support of this motion, the Debtors states as follows:[2]

## JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the District of Utah has jurisdiction over

---

[1] At the hearing on March 7, 2023, the Court granted the Debtors' Motion for joint administration pursuant to which the Debtors' chapter 11 cases are jointly administered for procedural purposes only under In re Meridian Restaurants Unlimited, LC, case no. 23-20731-KRA.

[2] Unless otherwise specified, all references herein to "Section," "§," "Bankruptcy Code" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, et seq.

this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicate for the relief requested herein includes herein are §§ 105(a), 363(b) and 366 and Fed. R. Bankr. P. 6003 and 6004.

## BACKGROUND

3. On March 2, 2023, (the "Petition Date"), the Debtors separately filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court").

4. The Debtors are authorized to operate their business and manage their properties as debtors-in-possession under §§ 1107(a) and 1108. No creditors' committee is appointed in the Debtors' chapter 11 cases by the Office of the United States Trustee, nor has any trustee or examiner been requested or appointed.

5. A description of the Debtors' business, the reasons for filing the chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set more fully described in the *Declaration of James Winder in Support of First Day Relief* [Dkt. No. 25] (the "Winder Declaration"), which the Debtors hereby adopt and incorporate as if fully set forth herein.

6. The Debtors currently operate one-hundred sixteen (116) Burger King restaurants (the "Restaurants") under various franchise agreements, lease agreements, and other contracts and

documents supporting the franchise operations.³ The Debtors operate the Restaurants in nine (9) states: Utah, Montana, Wyoming, North Dakota, South Dakota, Minnesota, Nebraska, Kansas, and Arizona. The franchise restaurants are operated by Debtors AZM, HR, MR, NDM, and NKS.

7. In the ordinary course of their business operations, the Debtors require services from all manner of utilities including, but not limited to, electricity, gas, water, telecommunications, waste services, and other utility services (collectively, the "Utility Services") from approximately one hundred forty four (144) utility companies (each a "Utility Provider," and, collectively, the "Utility Providers"), including, but not limited to, municipal entities. A non-exclusive list of Utility Providers as of the Petition Date is attached to this Motion as Exhibit 1 (the "Utility Provider List").⁴

## RELIEF REQUESTED

8. By this motion, the Debtors request: (i) entry of the Interim Utilities Order, substantially in the form filed herewith: (a) deeming Utility Providers adequately assured of future performance; (b) establishing procedures for resolving objections by Utility Providers related to adequate assurance; (c) prohibiting Utility Providers from altering, refusing or discontinuing service to the Debtors on account of prepetition invoices, or otherwise, pending the entry of a Final Order on the relief requested herein; and (d) scheduling a Final Hearing on this motion to consider granting the relief requested herein on a final basis; and, (ii) after the Final Hearing, entry of the

---

³ Collectively, a total of one hundred eighteen (118) restaurants are operated or managed by the Debtors and non-debtor affiliates. However, only one hundred sixteen (116) of those restaurants are operated by the entities in the jointly administered chapter 11 cases.

⁴ The inclusion of any entity in, or omission of any entity from, the Utility Provider List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of § 366, and the Debtors reserve all rights and defenses with respect thereto.

{Z0410401/1 }  
RQN 1631499  
4868-7508-4884, v. 4

4

Final Utilities Order, granting the relief required herein on a final basis.

### PROPOSED ADEQUATE ASSURANCE PROCEDURES TO RESOLVE OBJECTIONS BY UTILITY PROVIDERS

9. The Debtors intend to pay post-petition obligations to the Utility Providers in a timely manner. Cash held by the Debtors, cash generated in the ordinary course of business, will provide sufficient liquidity to pay the Debtors' Utility Service obligations in accordance with their prepetition practices. Further, because the Debtors do not believe they have any secured creditors to whom cash collateral obligations are owed, the Debtors' cash will be available to make timely payments to Utility Providers post-petition.

10. To provide the Utility Providers with additional adequate assurance of payment pursuant to § 366, the Debtors propose to deposit cash in an amount equal to two weeks' payment for Utility Services (less any Prepetition Deposits that fully exceed outstanding prepetition obligations) (the "Adequate Assurance Deposit"),[5] calculated using the twelve (12)-month historical average for such payments prior to the Petition Date, into a newly created, segregated account for the benefit of the Utility Providers (the "Utility Deposit Account").[6] The Adequate Assurance Deposit will be placed into the Utility Deposit Account within twenty (20) days of the Petition Date. The Adequate Assurance Deposit will be held by the Debtors in the Utility Deposit Account for the benefit of the Utility Providers on the Utility Provider List during the pendency

---

[5] To the extent a Utility Provider has multiple accounts with the Debtors, each two-week Adequate Assurance Deposit will be calculated and funded into the Utility Deposit Account on a per-account, not per-provider, basis.

[6] The Debtor believes it is current on all prepetition payments to Utility Providers. Based on a monthly average for the twelve (12) months immediately prior to the Petition Date, the Debtors estimate that their cost of Utility Services for the next thirty (30) days will be approximately $400,000.

of these chapter 11 cases. The Debtor seeks the entry of an order determining that the Adequate Assurance Deposit provides Utility Providers with adequate assurance of payment under § 366(b) and (c)(1)(A) and deeming all Utility Providers entitled to such assurance of payment under § 366 to have received adequate assurance of payment.

11. The Debtors may, if necessary, adjust the Adequate Assurance Deposit if the Debtors terminate any of the Utility Services provided by a Utility Provider, make other arrangements with certain Utility Providers for adequate assurance of payment, determine that an entity listed on the Utility Provider List is not a utility company as defined by § 366, or supplement the Utility Provider List to include additional Utility Providers. Based on the foregoing, the Debtors estimate that the total amount of the Adequate Assurance Deposit will be approximately $300,000.[7] No liens will encumber the Adequate Assurance Deposit or the Utility Deposit Account.

12. The Debtors further request that the Adequate Assurance Deposit be automatically available to them, without further Court order, upon the effective date of a chapter 11 plan for the Debtors. Due to anticipated Restaurant closures, the Debtors expect to reduce their utility expenses during the pendency of the chapter 11 cases. Additionally, if the Debtors terminate any of the Utility Services provided by a Utility Provider, the Debtors request that they immediately be permitted to reduce the Adequate Assurance Deposit to reflect such termination of Utility

---

[7] Out of an abundance of caution, the Adequate Assurance Deposit includes both approximately $200,000.00 in adequate assurance for the Utility Providers listed in Exhibit 1, to be funded in the first 20 days of the Petition Date, plus an additional $100,000.00 on or before April 15, 2023 to provide adequate assurance to any Utility Providers that may have been inadvertently excluded from the Utility Provider List.

Services.[8]

13. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in accordance with their prepetition practices (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Providers in full satisfaction § 366 of the Bankruptcy Code.

14. After entry of the Interim Utilities Order proposed herewith, any Utility Provider failing to request additional adequate assurance by filing an objection to this Motion shall be deemed to have been provided with adequate assurance of payment as required by § 366 and shall be prohibited from altering, refusing, or discontinuing Utility Services, including as a result of unpaid charges for prepetition Utility Services. In addition, such Utility Provider will further be deemed to have waived any right to seek additional adequate assurance during the chapter 11 case, except as provided in § 366(c)(3). If, however, a Utility Provider believes adequate assurance beyond that proposed in this motion is necessary, the Debtor submits that the Utility Provider must make an additional assurance request pursuant to the procedures described below (the "Adequate Assurance Procedures").

15. Considering the adverse consequences to the Debtors' business operations from any interruption in services by the Utility Providers, but recognizing the right of the Utility Providers to evaluate the proposed adequate assurance on a case-by-case basis, the Debtors propose the following Adequate Assurance Procedures to resolve additional assurance requests in an orderly

---

[8] In the event that a Utility Provider has more than one account with the Debtors, then upon termination of an account by the Debtors, only that portion of the Adequate Assurance Deposit attributable to such account will be returned.

and fair manner:

    a. Within five (5) business days after the date of entry of the Interim Utilities Order, the Debtors will mail a copy of the Interim Utilities Order to the Utility Providers, together with a notice of the Final Hearing on this motion.

    b. Subject to entry of the proposed Interim Utilities Order, the Debtors will deposit $200,000.00, in the Utility Deposit Account within twenty (20) days of the Petition Date, and an additional $100,000.00 into the Utility Deposit Account on or before April 15, 2023.

    c. If an amount relating to Utility Services provided post-petition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period, such Utility Provider may request a disbursement from the Utility Deposit Account by giving notice to: (i) proposed counsel to the Debtors, (a) Ray Quinney & Nebeker, P.C. 36 South State Street, 14th Floor, Salt Lake City, Utah 84111, Attn: Michael R. Johnson (mjohnson@rqn.com); and (b) Markus Williams Young & Hunsicker, LLC, 1775 Sherman Street, Suite 1950, Denver, Colorado 80203 Attn: James T. Markus (jmarkus@markuswilliams.com), William G. Cross (wcross@markuswilliams.com) and Lacey S. Bryan (lbryan@markuswilliams.com); (ii) The Office of the United State Trustee, Attn: Peter Kuhn, Asst. U.S. Trustee, 405 South Main Street, Suite 300, Salt Lake City, Utah 84111; and (iii) counsel to any statutory committee appointed in these cases (if any) (the "Utility Notice Parties"). The Debtors shall honor such request within twenty-one (21) business days after the date the Debtors receive the request, subject to the ability of the Debtors and any such requesting Utility Provider to resolve any dispute regarding such request without further order of the Court. To the extent a Utility Provider receives a disbursement from the Utility Deposit Account, the Debtors shall replenish the Utility Deposit Account in the amount so disbursed.

    d. The Adequate Assurance Deposit deposited into the Adequate Assurance Account on behalf of any Utility Provider (including any additional amount deposited upon request of any applicable Utility Provider) shall be returned to the Debtors, less any amounts owed on account of unpaid, postpetition Utility Services, by no later than five (5) business days following the earlier of the date upon which (i) a chapter 11 plan becomes effective after being confirmed in the Chapter 11 Cases or (ii) the Debtors providing notice to a Utility Provider that services provided to the Debtors by such Utility Provider no longer will be needed. Any amounts returned to the Debtors pursuant to this provision shall be subject to the terms and conditions of any then applicable cash collateral order.

e.  If a Utility Provider is not satisfied with the proposed adequate assurance herein and seeks additional adequate assurance of payment, it must serve an additional assurance request upon counsel for the Debtor, whose address appears below. Each additional assurance request must: (i) be made in writing; (ii) set forth the amount and form of additional assurance of payment requested; (iii) set forth the type of Utility Services, any account numbers, and the location for which Utility Services are provided; (iv) include a summary of the Debtor's payment history to such Utility Provider, including whether the Utility Provider holds any deposits or other security, and, if so, in what amount; and (v) set forth why the Utility Provider believes that the proposed adequate assurance herein is not sufficient adequate assurance of payment. Said request must be made within fourteen (14) days of the entry of the Interim Utilities Order.

f.  Upon the Debtors' receipt of an additional assurance request, the Debtors will have twenty-one (21) days from the receipt of such additional assurance request (the "Resolution Period") to negotiate with the requesting Utility Provider and resolve its additional assurance request.

g.  If a Utility Provider does not file and serve an additional assurance request, the Utility Provider shall be: (i) deemed to have received "satisfactory" adequate assurance of payment in compliance with § 366; and (ii) forbidden from discontinuing, altering, or refusing Utility Services to, or discriminating against, the Debtors on account of any unpaid prepetition charges or requiring additional assurance of payment other than the proposed adequate assurance.

h.  The Debtors may resolve any additional assurance request, objection or Determination Motion (as defined below) by mutual agreement with the Utility Provider and may provide the Utility Provider with an alternative form of adequate assurance of payment, without further order of this Court, if the Debtors believe that such additional assurance is reasonable; provided, however, that the Debtors shall maintain a summary record of such agreements and their respective terms, and such summary record and the agreements themselves shall be available upon demand to any official committee appointed in the chapter 11 cases and to the U.S. Trustee.

i.  Should the Debtors be unable to reach a mutual resolution with respect to an additional assurance request within the Resolution Period, the Debtors shall file a motion with the Court seeking a hearing to determine the adequacy of assurance of payment with respect to a particular Utility Provider (the "Determination Motion") and, if the Determination Motion is not withdrawn, the Court will determine the adequacy of the proposed adequate assurance with respect to that Utility Provider.

j.  The Debtors propose that any Utility Provider that objects to this Motion, including

{Z0410401/1 }
RQN 1631499
4868-7508-4884, v. 4

9

the Adequate Assurance Procedures, must file a written objection (an "<u>Objection</u>") and serve such Objection on the Debtor no later than seven (7) days prior to the date of the Final Hearing.

k. Until the conclusion of the Final Hearing and entry of an appropriate order by the Court any Utility Provider that files an objection is prohibited and enjoined from altering, refusing, or disconnecting its Utility Services to the Debtors.

## **BASIS FOR RELIEF REQUESTED**

16. In their business operations, the Debtors receive Utility Services from the Utility Providers, which have been and will be crucial to the continued operations of the Debtors. These Utility Services are necessary to operate the Debtors' businesses. Continuing the Utility Services without interruption is essential to the Debtors' ongoing business and the success of the Debtors' chapter 11 cases. Any interruption of utility services – even for a brief period of time – would seriously disrupt the Debtors' ability to operate their business. Such a result could jeopardize the Debtors' restructuring efforts and, ultimately, creditor recoveries. The Debtors believes they are current on all prepetition payments to Utility Providers. The Debtors assert that the relief requested herein is necessary to ensure uninterrupted business operations and avoid irreparable harm to the Debtors' business and the estate.

17. The Debtors seek to preserve the protections that Utility Providers have under the Bankruptcy Code, while affording the Debtors an opportunity to provide and negotiate any additional adequate protection without facing the threat of imminent termination of Utility Services.

18. While the term "utility" is not defined in the Bankruptcy Code, courts have concluded that § 366 is not limited to public utilities, and that "utility" is meant to be interpreted broadly so as to include entities that occupy "some special position with respect to the debtor, such as an electric

company, gas supplier or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility." H.R.Rep. 595, 95th Cong., 1st Sess. 350 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 60 (1978). In accordance with the above, the Debtor has determined that the Utility Providers are utilities within the meaning of Bankruptcy Code Section 366, and therefore, are identified above.

19. Section 366(a) provides that "[e]xcept as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due."

20. Further, § 366(b) provides that "[s]uch utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date." 11 U.S.C. § 366(b).

21. The policy underlying § 366 is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate assurance that the debtor will pay for post-petition services. *See* H.R. Rep. No. 95-595, at 350 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6306.

22. Based on a monthly average for the twelve (12) months immediately prior to the Petition Date, the Debtors estimate that their cost of Utility Services for the next thirty (30) days will be approximately $400,000. The Debtors estimate that the total amount of the Adequate Assurance Deposit will be approximately $300,000. The Adequate Assurance Deposit would serve

{Z0410401/1 }
RQN 1631499
4868-7508-4884, v. 4

11

as cash security deposits to provide adequate assurance of payment for Utility Services provided to the Debtors after the Petition Date.

23. Similar procedures have been approved by other bankruptcy courts. *See, e.g.*, *In re FirstEnergy Solutions Corp.*, No. 18-50757 (AMK) (Bankr. N.D. Ohio Apr. 26, 2018) (approving adequate assurance deposit equal to two (2) weeks of utility service); *In re AcuSport Corp.*, No. 18-52736 (JEH) (Bankr. S.D. Ohio May 21, 2018) (same); *In re Energy Future Holdings Corp.*, No. 14-10979 (CSS) (Bankr. D. Del. June 6, 2014) (same); *In re GSE Environmental, Inc.*, No. 14-11126 (MFW) (Bankr. D. Del. May 30, 2014) (same); *In re Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Apr. 15, 2014) (same); *In re Longview Power, LLC*, No. 13-12211 (BLS) (Bankr. D. Del. Sep. 25, 2013) (same); *In re Prommis Holdings*, No. 13-10551 (BLS) (Bankr. D. Del. Apr. 25, 2013) (same).

24. The Debtors intend to pay post-petition obligations to the Utility Providers in a timely manner. Here, the Utility Providers are adequately assured against any risk of nonpayment for future services with the Adequate Assurance Deposit. Further, the Debtors' ongoing ability to meet obligations as they come due provides assurance of the Debtors' payment of any currently unknown future obligations. In the event the Debtors fail to timely pay for post-petition Utility Services within the normal period allowed for customers of that Utility Provider, the Utility Provider would be permitted to request a disbursement from the Utility Deposit Account. Following any utilization of any portion of the Adequate Assurance Deposit by the Utility Provider, the Debtor would replenish the Adequate Assurance Deposit with that Utility Provider to the amount of the initial deposit with that Utility Provider. The Debtors submit that remaining current on post-petition

obligations to Utility Providers in combination with the Adequate Assurance Deposit constitute sufficient adequate "assurance of payment" under § 366(c).

25. In accordance with § 366(a), the Debtors also request that all Utility Providers, including subsequently added Utility Providers, be prohibited from altering, refusing, or discontinuing Utility Services to the Debtors absent further order of the Court.

26. While the Debtors have used their best efforts to list all Utility Providers on <u>Exhibit 1</u> hereto, it is possible that certain Utility Providers may have been inadvertently omitted from that list. To the extent the Debtors subsequently identify additional providers of Utility Services or determine an entity was improperly included as a Utility Provider, the Debtors seeks authority, in their sole and reasonable discretion and without further order of Court, to add or delete any Utility Provider. The Debtors propose to have the terms of the proposed order submitted herewith apply to any such subsequently identified Utility Provider. Moreover, the Debtors will serve on subsequently added Utility Providers a copy of this Motion and the Order entered with respect to the Motion on such Utility Provider.

27. The proposed Adequate Assurance Procedures are reasonable because they will ensure that the Debtors' Utility Services continue while providing a streamlined process for Utility Companies to challenge the adequacy of the Proposed Adequate Assurance or seek an alternative form of adequate assurance. For the foregoing reasons, the Proposed Adequate Assurance and the Adequate Assurance Procedures are necessary, appropriate, and in the best interests of the Debtors, their estates, and all other parties in interest in these cases. Accordingly, the Court should authorize the Debtors to the relief requested herein.

## REQUEST FOR IMMEDIATE RELIEF
## UNDER FED. R. BANKR. P. 6003(B)

28. Fed. R. Bankr. P. 6003(b) authorizes this Court to grant the relief requested herein because such relief is necessary to avoid immediate and irreparable harm to the Debtors and their estate. *See* Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would threaten the value of the debtor's estate. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing application of immediate and irreparable harm standard as applied to Bankruptcy Rule 4001); *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008) ("The Advisory Committee commentary [to Bankruptcy Rule 6003] plainly suggests that courts rely on the procedures and advanced case law under Rule 4001(b)(2) and (c)(2) for implementation of new Rule 6003.").

29. The Debtors submit that entry of the Interim Utilities Order is appropriate and necessary to avoid immediate and irreparable harm to the estate pending the Final Hearing. The Debtors require the above-described Utility Services to operate. Any disruption in the Utility Services would cause immediate and irreparable harm to the Debtors' operations and the ability of the Debtors to move forward with their reorganization efforts. Thus, approval of this motion on an interim basis is necessary to avoid immediate and irreparable harm to the Debtors' estates pending the Final Hearing under Fed. R. Bankr. P. 4003(b).

## REQUEST FOR WAIVER OF FED. R. BANKR. P. 6004(H)

30. Fed. R. Bankr. P. 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the

relief the Debtors seek in this motion is necessary for the Debtors to operate without interruption and to preserve value for its estate. Accordingly, the Debtors respectfully request the Court waive the fourteen-day stay imposed by Fed. R. Bankr. P. 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

31. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, including any claim by a Utility Provider, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract or lease under § 365. The Debtors expressly reserve the right to contest any claims, including, but not limited to, any claim by a Utility Provider. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be, and should not be construed as, an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

32. Pursuant to L.B.R. 2018-1(b) and 9013-1, a copy of this motion and the Interim Utilities Order have been or will be immediately served by facsimile, email, overnight mail, or hand delivery, to: (i) the United States Trustee for the District of Utah; (ii) those entities or individuals included on the Debtors' consolidated list of the 30 largest unsecured creditors; (iii) all parties requesting notices pursuant to Fed. R. Bankr. P. 2002; (v) the IRS and other relevant government agencies; and (vi) all Utility Providers (collectively, the "<u>Notice Parties</u>"). The Debtors submit that, considering the nature of the relief requested, no other or further notice need be given.

33. Upon entry of the Interim Utilities Order, the Debtors will serve a copy of the Interim Utilities Order, together with a proposed Final Utilities Order and notice of the Final Hearing on this motion in conformity with L.B.R. 9013-1, within five (5) business days on the Notice Parties. The Debtors request the Court set a deadline to object to entry of the Final Utilities Order, which deadline will be included in the notice.

## NO PRIOR REQUEST

34. The Debtors have not previously sought the relief requested herein from this or any other court.

## CONCLUSION

35. The Debtors assert the relief requested herein strikes a fair balance between the rights of Utility Providers and the rights of the Debtors under the Bankruptcy Code and the need, for the benefit of the Debtors and their estates, for the Debtors to continue to receive the Utility Services upon which their business and the operations depend. The Debtors do not believe Utility Providers will be prejudiced by the uninterrupted continuation of the Utility Services.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request the Court: (i) enter the Interim Utilities Order, substantially in the form filed herewith, deeming Utility Providers adequately assured of future performance, establishing procedures for resolving objections by Utility Providers related to adequate assurance, prohibiting Utility Providers from altering, refusing or discontinuing service to the Debtor on account of prepetition invoices, or otherwise, pending the entry of a Final Utilities Order; (ii) scheduling a Final Hearing on this motion to consider granting the relief requested herein on a final basis; (iii) after the Final Hearing, entry of the Final Utilities Order, granting the relief required herein on a final basis; and (iv)

granting such other and further relief as the Court finds necessary or appropriate under the circumstances.

Dated: March 9, 2023

Respectfully submitted,

RAY QUINNEY & NEBEKER P.C.

By: */s/ Michael R. Johnson*
Michael R. Johnson (7070)
David H. Leigh (9433)
Elaine A. Monson (5523)
36 South State Street, 14th Floor
Salt Lake City, Utah 84111
Tel: (801) 532-1500
Email: mjohnson@rqn.com
Email: dleigh@rqn.com
Email: emonson@rqn.com

*Proposed Counsel for the Debtor-In-Possession*

-- and --

MARKUS WILLIAMS YOUNG & HUNSICKER LLC

By: */s/ William G. Cross*
James T. Markus
William G. Cross
Lacey S. Bryan
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: wcross@markuswilliams.com
Email: lbryan@markuswilliams.com

*Proposed Counsel for the Debtor-In-Possession*

{Z0410401/1 }
RQN 1631499
4868-7508-4884, v. 4

17

# EXHIBIT 1
# LIST OF UTILITY PROVIDERS

| | | |
|---|---|---|
| ALP Utilities | APS | Arizona Water Co. |
| Beatrice City Board of Public Utilities | Black Hills Energy | Bona Vista Water |
| Brigham City Corp. | Capital Electric Corp. | Cass County Electric Cooperative |
| Centerpoint Energy | Century Link | Charter Communications |
| City & County of Butte-Silver Bow | City Magna Water | City of Belgrade |
| City of Billings | City of Bisbee | City of Bozeman |
| City of Cody | City of Columbia Falls | City of Devils Lake |
| City of Dickenson | City of Douglas | City of Fargo Utility |
| City of Fergus Falls | City of Great Falls | City of Hamilton |
| City of Helena | City of Holton | City of Hutchinson |
| City of Junction County | City of Laramie | City of Litchfield |
| City of Long Prairie | City of Manhattan Kansas | City of Missoula |
| City of Mitchell | City of Montevideo Utilities Department | City of Park Rapids |
| City of Pittsburg | City of Rawlins | City of Redwood Falls Public Utilities |
| City of Safford | City of Salina | City of Saratoga Springs |
| City of Sierra Vista | City of Topeka | City of West Fargo |
| City of West Jordan | City of Willcox | City of York |
| Clearfield City | Comcast | Community Water |
| Consolidated | Cottonwood Improvement District | County Water District of Billings |
| Cox Business | Dominion Energy | East Grand Forms Water and Light |
| Energy West Montana | Evergy | Farmington City |
| Flathead County Water District #1 | Flathead Electric Cooperative | Giant Communications |
| Graham County Electric Co Op | Grand Forks Utility Billing | Granite Telecommunications |
| Great Plains | Halstad Telephone Company | Hastings Utilities |
| Heartland Natural Gas | Heber City – Water | Heber Light and Power |
| Hillsboro Municipal Utilities | Hutchinson Utilities Commission | Jamestown Water Department |
| Kansas Gas Service | Layton City | Lehi City |
| Lewistown Water and Sewer Department | Liberty Utilities | Lincoln Electric System |
| Lincoln Water & Wastewater System | Lockwood Water and Sewer District | Logan City |

4854-7999-8037, v. 1

# EXHIBIT 1
# LIST OF UTILITY PROVIDERS

| | | |
|---|---|---|
| Lumen | Manda Water Department | McPherson Board of Public Utilities |
| Mediacom | Midco Business | Mid-Rivers Communications |
| Midvale City | Minnesota Energy | Minnesota Power |
| Mitchell Telecom | Montana-Dakota Utilities | Moon Lake Electric |
| Moorhead Public Service | Municipal Utility Bill | Nebraska Public Power District |
| New Ulm Public Utilities | Northwestern Energy | Nuvera |
| Ogden City Utilities | Ooma | Otter Tail Power |
| Park City | Provo City | Rise Broadband |
| Rocky Mountain Power | Roosevelt | Roy City |
| Sandy City | Sidney Water Department | SLC Public Utilities |
| Snyderville Basin Water Reclamation | South Valley Sewer | Southwest Gas |
| Sparklight | Spectrum | Strata |
| Sulphur Springs Valley Electric | Taylorsville-bennon | TEP |
| Time Warner Cable | Town of Thatcher | Uintah City |
| Waterpro Inc. | West Haven | Willmar Municipal |
| Woodriver Energy | Xcel Energy | Yellowstone Valley Electric |
| Waste Harmonics | | |

4854-7999-8037, v. 1