| | |
|---|---|
| Michael R. Johnson (7070) <br> David H. Leigh (9433) <br> Elaine A. Monson (5523) <br> **RAY QUINNEY & NEBEKER P.C.** <br> 36 South State Street, 14th Floor <br> Salt Lake City, Utah 84111 <br> Tel: (801) 532-1500 <br> Email: mjohnson@rqn.com <br> Email: dleigh@rqn.com <br> Email: emonson@rqn.com | James T. Markus <br> William G. Cross <br> Lacey S. Bryan <br> **MARKUS WILLIAMS YOUNG & HUNSICKER LLC** <br> 1775 Sherman Street, Suite 1950 <br> Denver, Colorado 80203-4505 <br> Telephone (303) 830-0800 <br> Facsimile (303) 830-0809 <br> Email: jmarkus@markuswilliams.com <br> Email: wcross@markuswilliams.com <br> Email: lbryan@markuswilliams.com |

*Proposed Counsel for the Debtor-In-Possession*

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| In re: <br><br> MERIDIAN RESTAURANTS UNLIMITED, LC; <br> LOVELOUD RESTAURANTS, LC; <br> AZM RESTAURANTS, LC; HR RESTAURANTS, LC; MR RESTAURANTS, LC; NDM RESTAURANTS, LC; and NKS RESTAURANTS, LC, <br><br> Debtors-in-Possession. | Bankruptcy Case No. 23-20731-KRA <br> Bankruptcy Case No. 23-20732-KRA <br> Bankruptcy Case No. 23-20733-KRA <br> Bankruptcy Case No. 23-20736-KRA <br> Bankruptcy Case No. 23-20737-KRA <br> Bankruptcy Case No. 23-20738-KRA <br> Bankruptcy Case No. 23-20739-KRA <br><br> Chapter 11 <br><br> Judge Kevin R. Anderson <br><br> **Jointly Administered Under Bankruptcy Case No. 23-20731-KRA** <br><br> [Filed via ECF] |

**OMNIBUS MOTION FOR ENTRY OF ORDER AUTHORIZING
THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES OF NONRESIDENTIAL REAL PROPERTY**

Debtors Meridian Restaurants Unlimited, L.C. ("Meridian"), Loveloud Restaurants, L.C. ("Loveloud"), AZM Restaurants, L.C. ("AZM"), HR Restaurants, L.C. ("HR"), MR Restaurants, L.C. ("MR"), NDM Restaurants, L.C. ("NDM"), and NKS Restaurants, L.C. ("NKS") (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases,[1] by and through their undersigned proposed counsel, hereby request the Court enter an order, substantially in the form filed herewith, authorizing the rejection of certain unexpired leases of nonresidential real property and executory contracts. In support of this motion, the Debtors state as follows:[2]

## Jurisdiction and Venue

1. The United States Bankruptcy Court for the District of Utah has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested herein includes § 365 and Fed. R. Bankr. P. 6006.

## Background

2. On March 2, 2023, (the "Petition Date"), the Debtors separately filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Utah (the "Court").

3. The Debtors are authorized to operate their business and manage their properties as debtors-in-possession under §§ 1107(a) and 1108. No Trustee or examiner has been requested by

---

[1] On March 10, 2023, the Court entered its *Interim Order Authorizing and Directing the Joint Administration and Procedural (but not Substantive) Consolidation of Related Cases* [Dkt. 71, Case No. 23-20739-KRA] (the "Joint Administration Order") pursuant to which the Debtors' chapter 11 cases are jointly administered for procedural purposes only under In re Meridian Restaurants Unlimited, LC, case no. 23-20731-KRA.

[2] Unless otherwise specified, all references herein to "Section," "§," "Bankruptcy Code" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

any party, or appointed by the Court. On March 28, 2023, the Office of the United States Trustee appointed a single creditors' committee for all of the Debtors' chapter 11 cases.

4.  The Debtors constitute one of the largest current franchisees of Burger King restaurants. The Debtors operate one-hundred sixteen (116) Burger King restaurants (the "Restaurants").[3] The Debtors operate the Restaurants in nine (9) states: Utah, Montana, Wyoming, North Dakota, South Dakota, Minnesota, Nebraska, Kansas, and Arizona.[4]

5.  Each of the Restaurants is subject to its own Burger King Restaurant Franchise Agreement, license agreements, and other agreements, by and between BKC and the applicable operating subsidiary Debtor, *i.e.*, AZM, HR, MR, NDM, and NKS (collectively, the "Franchise Agreements"). Each of the Restaurants is also subject to its own lease agreement (the "Lease Agreements") by and between the applicable operating subsidiary Debtor and the lessor of the property on which the Restaurant is located; BKC is the landlord and lessee of some of the Restaurant properties. In some, but not all cases, either Meridian or Loveloud have guaranteed the applicable operating subsidiary's lease obligations.

6.  Over the past several years, and particularly as a result of the COVID-19 pandemic, franchisees system-wide have experienced declining foot traffic. The Debtors' business also suffered significantly from loss of foot traffic, resulting in declining revenue without proportionate decreases in rental obligations, debt service, and other liabilities. External pressures resulting from the pandemic, including recent increases in wages (33% the past few years) and the cost of labor,

---

[3] Collectively, a total of one hundred eighteen (118) restaurants are operated or managed by Meridian, the Meridian Debtors, and non-debtor affiliates. However, only one hundred sixteen (116) of those restaurants are operated by the entities in the jointly administered chapter 11 cases.

[4] A full description of the Debtors' business, the reasons for filing the chapter 11 cases and the relief sought from this Court to allow for a smooth transition into operations under chapter 11 is set more fully described in the *Declaration of James Winder in Support of First Day Relief* [Dkt. 25, Case No. 23-20739-KRA] (the "Winder Declaration"), which the Debtors hereby adopt and incorporate as if fully set forth herein.

shipping and food inflation (22% the past two years), decreased availability of labor, and inflation generally have driven the Debtors' cash flow issues.

7. Debtor Meridian has had lower than the Burger King system average annual restaurant revenue volumes. The original founder of Meridian acquired many underperforming restaurants with the unrealized objective to grow annual volumes. These lower volumes result in smaller profit margins and thus greater sensitivity to the recent dramatic rise in labor, commodity prices, and maintenance costs. As a result, although certain of the Restaurants are profitable, others operate at a loss, and have for many years, resulting in the Debtors' inability to meet financial obligations timely.

8. The Debtors' management team and advisors have conducted, and will continue to review and update, an extensive restaurant-by-restaurant performance analysis of all existing Restaurants to evaluate, among other factors, historical and recent store profitability, historical and recent sales trends, occupancy costs, the geographic market in which each store is located, the potential to negotiate rent reductions with the applicable landlords, and specific operational circumstances related to each Restaurant's performance (the "Performance Evaluation").

9. In conducting the Performance Evaluation, the Debtors' management team and advisors have determined it is appropriate to cease operations and close certain of the Restaurants ("Store Closings"). It is possible, if not likely, upon further analysis the Debtors' management team and advisors may determine additional Store Closings are appropriate, and additional motions similar to the instant motion, and the Motion for Entry of Order Authorizing Immediate Store Closings at Certain Restaurant Locations filed on March 29, 2023 (the "Store Closure Motion") [Dkt. 108, Case No. 23-20739-KRA], will be filed in this case.[5] For the avoidance of doubt,

---

[5] The Debtors filed their *Application to Employ Keen-Summit Partners LLC as Real Estate Advisor for the Debtors-in-Possession* on March 20, 2023 [Dkt. 79, Case No. 23-20739-KRA], which remains pending. Keen Summit will

however, the Debtors do not anticipate closing all or even a substantial portion of their Restaurants. As the Debtors and their professionals negotiate rent concessions and other operational improvements with the applicable landlords, the Debtors expect that it will be in the Debtors' best interest *not* to conduct Store Closings at most of its locations.

10. The Store Closings, and thus the rejection of the associated Lease Agreements and Franchise Agreements (together, the "Agreements"), are a critical component of the Debtors' go-forward business plan. As such, entry of an order authorizing the rejection of the Agreements will allow the Debtors to begin maximizing value for the Debtors' estates.

11. The Debtors previously filed the Store Closure Motion seeking Court authority to immediately cease operations at twenty-three (23) Restaurants. Additionally, prior to the Petition Date the Debtors ceased operations at four (4) additional Restaurants. Through this separate motion, the Debtors seek authority from the Court to reject the Agreements associated with the twenty-seven (27) closed and to-be-closed Restaurants (27 Lease Agreements, and 24 Franchise Agreements), with the rejections being effective as of the date of filing of this motion or, alternatively, the date the Debtors vacate the applicable premises, whichever occurs first.

12. Lists of the Lease Agreements and Franchise Agreements that the Debtors seek authority to reject are attached hereto as **Exhibits A** and **B**, respectively.

## Basis for Relief

13. Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a); *see also In re Summit Land Co.*, 13 B.R. 310 (Bankr. D. Utah 1981). Similarly,

---

begin lease modification negotiations with the Debtors' landlords for certain rent concessions and cure cost reductions with respect to certain Lease Agreements with the goal of improving the financial performance of the Debtors' remaining Restaurants.

assumption or rejection of executory contracts or unexpired leases by a debtor is subject to Court review under the business judgment standard. *See NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523 (1984); *In re Mile High Medal Systems, Inc.*, 899 F.2d 887, 896 (10th Cir. 1990); *In re Brick House Props., LLC*, 633 B.R. 410 (Bankr. D. Utah 2021). The Court may approve a debtor's rejection of an executory contract or unexpired lease if such rejection is made in the exercise of such debtor's sound business judgment, and if such rejection benefits its estate. *See, e.g., Matter of Tilco, Inc.*, 558 F.2d 1369, 1372 (10th Cir. 1977); (*In re Bildisco*, 682 F.2d 72, 79 (3rd Cir. 1982), aff'd, 465 U.S. 513 (1984).

14. As noted by this Court in *In re Brick House Props., LLC*, in applying the business judgment standard, "'the Court acts as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession . . . . Generally, the Court should not interfere with the debtor in possession's exercise of business judgment to reject a lease or executory contract unless the decision is so manifestly unreasonable that it could not be based on sound business judgment.'" *Brick House Props.*, 633 B.R. at 424 (quoting *W. Wood Prods., Inc. v. W. Pellet Prods., LLC (In re W. Wood Prods., Inc.)*, 2013 Bankr. LEXIS 1521 (Bankr. D.N.M. Apr. 4, 2013)) (emphasis omitted).

15. It is enough if a debtor determines in its business judgment that a benefit will be realized. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 39 (3rd Cir. 1989) (citing *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987)). The business judgment standard requires that the Court approve the debtor's business decision unless that judgment is the product of bad faith, whim, or caprice. *Lubrizol Enter., Inc. v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir. 1985). *See also In re Bradlees, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996) (stating "[U]nder the business judgment test . . . [a court should

approve a debtor's proposed rejection] if the debtor can demonstrate that rejection will benefit the estate.").

16. Court approval under section 365(a) "should be granted as a matter of course." *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981). Section 365(a) "places responsibility for administering the estate with the [debtor in possession], not the court, and therefore furthers the policy of judicial independence considered vital by the authors of the Code." *Id.* It also "expedites the administration of estates" and "encourages rehabilitation by permitting the replacement of marginal with profitable business arrangements." *Id.*

17. Here, as part of the Debtors' efforts to maximize value for the estates and their creditors, the Debtors have determined the rejection of the Agreements is in the best interests of the Debtors and their estates, and sufficient business justification exists to approve the proposed rejection of the Agreements under § 365(a). The Debtors, with the assistance of their management, professionals and advisors, have determined the Store Closings represent a clear choice for reducing losses to the Debtors' estates, allowing the Debtors to optimize their remaining fleet of Restaurants. The Restaurants subject to closing fail to generate positive cash flow and therefore are a significant drain on liquidity. Because the Agreements at issue in this motion are tied to the Debtors' operations at Restaurants which already have or will soon cease operations, rejection of the Agreements is within the Debtors' sound business judgment.

18. The Debtors request that the Court approve rejection of the Agreements as of the date of the filing of this motion or, alternatively, the date the Debtors vacate the applicable premises, whichever occurs first. The Debtors further request the Court order any claim by any counterparty to the Agreements with respect to damages arising from the rejection of the Agreements be filed by motion no later than thirty (30) days after entry of the Court's order

granting this Motion.

## RESERVATION OF RIGHTS

19. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise to pay any claim; or (d) otherwise affect the Debtors' rights under § 365 to dispute any claim for damages arising from the rejection of the Agreements.

## NOTICE

20. Notice of this Motion and an opportunity to object is being provided to: (i) the Office of the United States Trustee; (ii) counsel for the Unsecured Creditors' Committee; (iii) all counterparties to the Agreements; (iv) all parties who have requested notice; (v) the Debtor's limited mailing matrix; and, (vi) any party whose interest in property of the estate will be directly affected by the relief requested in this motion. In light of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully requests entry an order, substantially in the form of proposed order attached hereto, authorizing the rejection of the Agreements as provided herein and granting such other and further relief as this Court deems just and proper

DATED: April 4, 2023    Respectfully submitted,

RAY QUINNEY & NEBEKER P.C.

By: */s/ Michael R. Johnson*
Michael R. Johnson (7070)
David H. Leigh (9433)
Elaine A. Monson (5523)
36 South State Street, 14th Floor
Salt Lake City, Utah 84111
Tel: (801) 532-1500

Email: mjohnson@rqn.com
Email: dleigh@rqn.com
Email: emonson@rqn.com

*Proposed Counsel for the Debtors-In-Possession*

-- and --

MARKUS WILLIAMS YOUNG & HUNSICKER LLC

By: */s/ Lacey S. Bryan*
James T. Markus
William G. Cross
Lacey S. Bryan
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: wcross@markuswilliams.com
Email: lbryan@markuswilliams.com

*Proposed Counsel for the Debtors-In-Possession*