Ellen E. Ostrow (14743)
eostrow@foley.com
FOLEY & LARDNER LLP
95 State Street, Suite 2500
Salt Lake City, UT 84111
Telephone: 801.401.8900
*Proposed Counsel for the Official
Committee of Unsecured Creditors*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF UTAH

| In re:<br><br>MERIDIAN RESTAURANTS UNLIMITED, LC, LOVELOUD RESTAURANTS, L.C., AZM RESTAURANTS, L.C., HR RESTAURANTS, L.C., MR RESTAURANTS, L.C., NDM RESTAURANTS, L.C., and NKS RESTAURANTS, L.C.,<br><br>Debtors. | **Bankruptcy Case No. 23-20731-KRA**<br>(Jointly Administered)<br>(Chapter 11)<br><br>Bankruptcy Case No. 23-20732<br>Bankruptcy Case No. 23-20733<br>Bankruptcy Case No. 23-20736<br>Bankruptcy Case No. 23-20736<br>Bankruptcy Case No. 23-20738<br>Bankruptcy Case No. 23-20739 |
|---|---|

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS STATEMENT OF POSITION REGARDING EMPLOYMENT APPLICATIONS OF MARKUS WILLIAMS YOUNG & HUNSICKER LLC AND RAY QUINNEY & NEBEKER P.C.**

The Official Committee of Unsecured Creditors (the "***Committee***") of the debtors and debtors-in-possession, Meridian Restaurants Unlimited, LC, *et. al.* (the "***Debtors***"), by and through its undersigned proposed counsel, hereby submits this statement of position with respect to the employment applications (collectively, the "***Applications***") of Markus Williams Young & Hunsicker LLC [Docket No. 15] and Ray Quinney & Nebeker P.C. [Docket No. 7].

On March 24, 2023, the United States Trustee (the "***U.S. Trustee***") objected to the Applications. The U.S. Trustee's objection to the Applications is largely based on intercompany transfers and equity interests between the Debtors. The Committee understands the U.S. Trustee's

1

concerns and takes these issues seriously. However, the Committee does not support the disqualification of the Debtors' counsel as we expect the Debtors will be transparent and account to the Committee with respect to the intercompany balances and transfers.

Multi-debtor representations in chapter 11 reorganizations "with potential intercompany claims against each other [are] not a categorical bar to court approval of common counsel or other professionals for joint debtors." *In re Easterday Ranches, Inc.*, 647 B.R. 236, 245 (Bankr. E.D. Wa. 2022); *see also In re Schwindt*, No. 12-31418 MER, 2013 WL 321297, at *4 (Bankr. D. Colo. Jan. 28, 2013) ("In addition, multi-debtor representation under Section 327(a) is also determined on a case-by-case basis, and 'rather than disapproving of multi-debtor representation as a *per se* conflict, courts should examine the factual circumstances surrounding the representation to determine whether it is appropriate."); *In re Guy Apple Masonry Contractor, Inc.*, 45 B.R. 160, 166 (Bankr. D. Ariz. 1984) ("For example, the existence of inter-company claims may not warrant the disqualification of trustee or counsel representing related Chapter 11 corporations.").

The cost to unsecured creditors of the estates of separate counsel would be cost prohibitive and of inconsequential value. Even where there are intercompany transfers or potential avoidance claims, as appears to be the case here, it is standard practice to allow multi-debtor representation such that estate assets may be conserved. *See, e.g.*, *In re Int'l Oil Co.*, 427 F.2d 186, 187 (2d Cir. 1970) (allowing appointment of trustee for parent and three wholly-owned subsidiaries and noting that the intercompany issues were not "sufficient to saddle the[] estates with the expense of separate trustees and trustees' attorneys"); *see also In re BH&P, Inc.*, 949 F.2d 1300, 1314 (3rd Cir. 1991) (same). Further, "[r]ecognizing the substantial cost of requiring additional trustees or counsel in cases where individual debtors have claims against each other, [courts] have taken a

4855-6976-7261.1

'wait and see,' fact-driven, approach, to determine the extent to which such is necessary." *In re Adelphia Commc'ns. Corp.*, 336 B.R. 610, 673 (Bankr. S.D.N.Y. 2006).

Although there may be issues that arise, the Committee believes that the facts and circumstances weigh against disqualification of Debtors' proposed counsel. *First*, checks against potential conflicts already exist in these cases. Not only do the Debtors have active creditors in these cases, including City National Bank, Bridge Funding Group, Burger King Corporation, trade suppliers, and multiple landlords, but the U.S. Trustee also appointed a diverse Committee, whose members are lenders, a landlord, food suppliers, and a service provider. In fulfilling its duties under 11 U.S.C. § 1103, the Committee is empowered to "consult with the trustee or debtor in possession concerning the administration of the case"; "investigate the acts, conduct, assets, liability, and financial condition of the debtor . . . and any other matter relevant to the case or to the formulation of a plan"; and "perform such other services as are in the interest of those represented." *See* 11 U.S.C. § 1103(c)(5); *see also In re W. Pac. Airlines Inc.*, 219 B.R. 575, 577-78 (Bankr. D. Colo. 1998) (noting that committees of unsecured creditors serve as "watchdogs" in bankruptcy).

*Second*, the Debtors stated in their Cash Management Motion at Docket No. 18 that their "corporate accounting personnel regularly reconcile the Debtors' books and records to ensure that all transfers are accounted for properly," and that "[t]he Cash Management System facilitates the timely and efficient collection, management, and disbursement of funds and allows the Debtors to accurately track cash flow on behalf of the entire business operation." Cash Management Motion at 6. Provided the Debtors are transparent with respect to the intercompany transfers and balances, if an actual conflict of interest between the Debtors arises, the Committee is well positioned to advocate for the respective interests of its constituency and, to the extent interests among the Debtors' respective creditors differ, create subcommittees to address the same.

4855-6976-7261.1

*Third*, if at some point Debtors become adverse to one another, withdrawal by conflicted professionals and replacement with conflicts counsel or other appropriate relief will be available on a timely basis. However, at this time, the potential conflicts raised by the U.S. Trustee are not central to these cases. The Debtors are pursuing a unified strategy of reorganization. The Committee does not take a position as to the merits of the Debtors' strategy at this time, but until the interdebtor claims become central to the cases, any conflicts appear to be potential, and to the extent they become actual, are manageable. The Committee and its proposed professionals can adequately represent the respective estates' interests in the early stages of these cases and protect against (and raise) any actual conflicts that may arise as the cases progress.

*Lastly*, joint representation of the Debtors is the most economically efficient manner for these cases to proceed. As Collier notes, "in small cases involving related debtors, it is seldom feasible to engage more than one set of professionals because of economic considerations." 3 COLLIER ON BANKRUPTCY ¶ 327.04[5] (16th ed. 2023). The Debtors' estate should not be saddled with the expense of separate counsel for each Debtor, which expenses may substantially harm and diminish any potential return to unsecured creditors.

For the foregoing reasons, the Committee does not support the disqualification of the Debtors' proposed counsel.

DATED: April 14, 2023.

FOLEY & LARDNER LLP

*/s/ Ellen E. Ostrow*
Ellen E. Ostrow

*Proposed Counsel for the Official Committee
of Unsecured Creditors*

4855-6976-7261.1