Michael R. Johnson (7070)
David H. Leigh (9433)
Elaine A. Monson (5523)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, 14th Floor
Salt Lake City, Utah 84111
Tel: (801) 532-1500
Email: mjohnson@rqn.com
Email: dleigh@rqn.com
Email: emonson@rqn.com

James T. Markus *(pro hac vice)*
William G. Cross *(pro hac vice)*
Lacey S. Bryan *(pro hac vice)*
**MARKUS WILLIAMS YOUNG & HUNSICKER LLC**
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: wcross@markuswilliams.com
Email: lbryan@markuswilliams.com

*Counsel for the Debtor-In-Possession*

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>MERIDIAN RESTAURANTS UNLIMITED, LC;<br>LOVELOUD RESTAURANTS, LC;<br>AZM RESTAURANTS, LC; HR RESTAURANTS, LC; MR RESTAURANTS, LC;<br>NDM RESTAURANTS, LC; and<br>NKS RESTAURANTS, LC,<br><br>Debtors-in-Possession. | Bankruptcy Case No. 23-20731-KRA<br>Bankruptcy Case No. 23-20732-KRA<br>Bankruptcy Case No. 23-20733-KRA<br>Bankruptcy Case No. 23-20736-KRA<br>Bankruptcy Case No. 23-20737-KRA<br>Bankruptcy Case No. 23-20738-KRA<br>Bankruptcy Case No. 23-20739-KRA<br><br>Chapter 11<br><br>Judge Kevin R. Anderson<br><br>**Jointly Administered Under<br>Bankruptcy Case No. 23-20731-KRA**<br><br>[Filed via ECF] |

**DEBTORS' (A) RESPONSE TO MOTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER TERMINATING
THE DEBTORS' EXCLUSIVE PERIODS TO FILE A CHAPTER 11 PLAN
AND SOLICIT ACCEPTANCES, (B) RESPONSE TO BURGER KING COMPANY LLC'S
JOINDER IN COMMITTEE MOTION**

1

Debtors Meridian Restaurants Unlimited, L.C. ("Meridian"), Loveloud Restaurants, L.C. ("Loveloud"), AZM Restaurants, L.C. ("AZM"), HR Restaurants, L.C. ("HR"), MR Restaurants, L.C. ("MR"), NDM Restaurants, L.C. ("NDM"), and NKS Restaurants, L.C. ("NKS") (collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned jointly administered chapter 11 cases, by and through their undersigned proposed counsel, hereby file their (a) *Response to Motion of the Official Committee of Unsecured Creditors for Entry of an Order Terminating the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances*, and (b) *Response to Burger King Company LLC's Joinder in Committee Motion*. In support hereof, the Debtors state as follows:[1]

1. The Official Committee of Unsecured Creditors (the "Committee") filed its *Motion of the Official Committee of Unsecured Creditors for Entry of an Order Terminating the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances* (the "Motion") on June 8, 2023, requesting the Court terminate the Debtors' exclusivity periods under § 1121(d), solely as to the Committee.

2. Specifically, the Committee requests the Court allow it to propose a competing plan and solicit acceptance of the same, including authority for the Committee to conduct a marketing and sale process as part of "market tested valuation," which, according to the Committee, is required by *203 North LaSalle. See Bank of America Nat. Trust and Sav. Ass'n v. 203 North LaSalle Street Partnership*, 526 U.S. 434, 435 (1999).

3. On June 13, 2023, Burger King Company LLC ("BKC") filed its *Joinder of Burger King Company LLC in the Motion of the Official Committee of Unsecured Creditors for Entry of*

---

[1] Unless otherwise specified, all references herein to "Section," "§," "Bankruptcy Code" and "Code" refer to the U.S. Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

2

*an Order Terminating the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances and General Reservation of Rights* (the "<u>BKC Joinder</u>").

4. At the outset, the Debtors are willing to stipulate to co-exclusivity <u>as to the Committee only</u> as of July 1, 2023. The Debtors intend to file their own Chapter 11 Plan on or before June 30, 2023, which, absent a consensus with the Committee, can be simultaneously solicited to parties in interest with any Chapter 11 Plan put forth separately by the Committee, assuming that the Committee files its competing plan on a timely basis so as to assure that these cases are proceeding forward in a timely fashion.

5. With respect to the substance of the Motion, the Committee's arguments in support of its request to terminate exclusivity are largely premised on the misguided and incorrect assertion that the Debtors are running out of cash and the assumption that the Debtors intend to proceed with an internal reorganization with a proposed "new value" contribution without market testing of the value of the equity to be retained or the Debtors' assets.

6. With respect to the Committee's assertion that the Debtors need to act quickly to avoid running out of cash, such assertion is without merit. Debtors will demonstrate that:

- For the first 12 weeks of Debtor's operations, actual weekly ending cash flows have exceeded projections every week (at an average of $1,072,000 over those 12 weeks);

- The ending cash balance for Week 13 (week of 5/29/2023) was an unfavorable $277,800 solely due to the timing of the early payment of June 2023 rents ( $828,100) being disbursed that week instead of the week of 6/5/2023.

- Cumulatively for the initial 13 Week period, the Debtor's actual weekly ending cash balance has averaged $968,475 greater than originally projected at the start of the filing.

- Debtor has outperformed sales expectations the past 8 weeks with an average 4.0% growth instead of the projected average 1.5% growth.

3

- More recently in the past 4 weeks compared to their 1.0% projected growth, the Debtor has realized an average 5.68% growth. Despite this excellent sales growth, go forward cash flow forecast includes a very modest and conservative 1.0% growth through the end of the year to ensure that we are keeping expenses in check and remain cash positive.

- Labor has come down by 2-3% of sales since the process began and food cost has decreased slightly from expectations since our initial filing coming in at $9,969,220 vs $10,220,111, a nearly 2.5% reduction from budget.

- Store-level EBITDA (or cash flow) for the 93 operating restaurants has been trending upwards through April of 2023, with YTD April store-level EBITDA 18.4% higher than prior year.

7. While the Committee is correct that the Debtors have expressed a strong preference for a "new value" reorganization plan whereby equity will be retained in exchange for an infusion of new value into the Debtors, no such Plan has actually been filed by the Debtors. Indeed, to date the Debtors have only been engaged in negotiations geared toward obtaining a consensus from the Committee with respect to an acceptable proposed Plan. Such conversations remain ongoing, and the Debtors ultimately seek to propose a consensual Plan with the Committee's support and participation. Further the Debtors' reorganization plan is intended to provide a materially superior recovery to creditors as opposed to a piecemeal sale as advocated by the Committee and Burger King.

8. It is the Debtors' position that deferring the termination of exclusivity with respect to the Committee only until July 1, 2023 will afford the Debtors an opportunity to not only continue their discussions with the Committee, but also to file a Chapter 11 Plan for all parties in interest to evaluate, either with the Committee's support or for comparison against any proposed alternative Plan from the Committee.

9. The Debtors acknowledge the testimony made by Mr. James Winder at the Section 341 Meeting of Creditors cited by the Committee in its Motion, wherein Mr. Winder stated that

4

no marketing of the Debtors' equity or assets had taken place prior to or since the Petition Date. The Debtors make clear herein, however, that they recognize their duties under the Code and *LaSalle* to the extent that a "new value" Plan is ultimately proposed. Agreeing to co-exclusivity with the Committee as of July 1, 2023, is indicative of the Debtors' acknowledgement of the same, insofar as competing Chapter 11 Plans have been found to satisfy *LaSalle*. *See In re Meruelo Maddux Props.*, 2013 U.S. Dist. LEXIS 112105, at *28 (C.D. Cal. Aug. 7, 2013 ("Namely, *by permitting more than one group to propose a plan*, the Bankruptcy Court tested the value of the reorganized debtor *against the market*.") (Emphasis in original). The Debtors further note they are actively exploring alternatives to a Plan solely based on a "new value" contribution.

10. In the Motion, the Committee seemingly urges a determination from the Court that only a market testing and actual sale effort as conducted by the Committee, and not the Debtors, will satisfy the absolute priority rule and the Debtors' obligations under *LaSalle*. However, while the Supreme Court determined that old equity cannot be retained free from competition, it expressly declined to decide "[w]hether a market test would require an opportunity to offer competing plans, or would be satisfied by a right to bid for the same interest sought by old equity." *LaSalle*, 526 U.S. at 458.

11. As noted above, the Debtors have not yet filed a Chapter 11 Plan, and, despite the Committee's assertions to the contrary, the Debtors have not ruled out a market test or sale effort but rather their plan will incorporate both market testing for both the new value contribution as well as sale alternatives for the stores. The Debtors do not oppose a marketing process, but it is the Debtors' position that such process can, should and indeed must be run by the Debtors, through an independent individual or entity to ensure neutrality.[2] The Debtors believe their financial advisor,

---

[2] The Debtors take issue with the Committee's bald allegations that Mr. Winder is conflicted from running a marketing process by his alleged personal tax liability and the receipt of $300,000 for board advisory fees. To the extent Mr.

5

Peak Franchise Capital, LLC, and its principal Michael Elliott are more than qualified to run such process and will do so in an independent, unbiased fashion to ensure maximum value for the benefit of creditors.

12. Moreover, while the Committee has a right under § 1103 to participate in the formulation of a Chapter 11 Plan, § 1103 provides no authority for the Court, prior to confirmation, to usurp the Debtors' rights to operate their businesses. This includes running a sale process. *See In re Dow Corning Corp.*, 199 B.R. 896, 900 (Bankr. E.D. Mich. 1996) ("[A]lthough it might be in the best interests of the estate to sell an asset, an official committee cannot usurp the power of management (trustee or debtor-in-possession) to make that choice."); *In re Calvary Temple Evangelistic Assoc.*, 47 B.R. 520, 525 (Bankr. D. Minn. 1984) ("[T]he exercise of § 105 powers to make an Order empowering the Creditors' Committee to effectuate a § 363(b) sale would not be consistent with the provisions of the Bankruptcy Code."). To the extent that the Committee's Motion seeks authority to run a process for and to consummate a sale of the Debtors' assets prior to confirmation, or otherwise intimates that such a sale is required under *LaSalle*, the Debtors object to the same.

13. As stated above, the Debtors remain in active and ongoing communications with the Committee in an effort to reach a consensus regarding a Chapter 11 Plan in this case. As such, the Debtors do not object to the termination of the Debtors' exclusivity with respect to the

---

Winder has any liability for the Debtors' unpaid taxes, which the Debtors do not concede and which the Committee certainly has not proven, any liability is secondary to the Debtors'. Suggesting that failure to pursue Mr. Winder for the Debtors' primary tax liability somehow prioritizes equity over creditors is akin to suggesting the Debtors (or any debtor, for that matter) are prioritizing guarantors over creditors by not seeking payment from secondary obligees. This is nonsensical. Moreover, the "board advisory fees" noted by the Committee were received by Mr. Winder in lieu of a formal salary for his work as the Debtors' controlling and managing officer. To the extent the Debtors have avoidance claims against Mr. Winder for the return of such funds (notably, funds paid for services actually rendered and for which there likely are numerous preference defenses that could be asserted), they would similarly have claims against all other employees or vendors paid for services rendered prior to the Petition Date.

4859-1662-4490, v. 3

Committee only, as of July 1, 2023, in order to facilitate negotiations between the Debtors and the Committee, and to allow the Debtors to put forth their own Chapter 11 Plan for parties in interest to evaluate.

14. With respect to the BKC Joinder, it appears that BKC is only joining in the Committee's request that exclusivity be terminated as to the Committee, and is not also asking that exclusivity be terminated as to it or any other constituency. To the extent BKC is asking for exclusivity to terminate generally, however, the Debtors oppose that request for the reasons outlined above.

15. Finally, BKC makes many factual and legal arguments in the BKC Joinder. Without addressing those factual and legal arguments, the Debtors simply note that BKC's factual and legal arguments are disputed, and the Debtors do not concede them. For example, BKC cites no authority from this Circuit adopting the hypothetical test, and at least one bankruptcy court in this Circuit has adopted the actual test for assumption of executory contracts such as BKC's franchise agreements here. *See In re Aerobox Composite Structures, LLC*, 373 B.R. 135 (Bankr. D.N.M. 2007). Further, while BKC claims that there was a change in management control and that is an incurable default, BKC has known about that change in management control for years and has not raised the issue previously.

WHEREFORE, the Debtors respectfully request the Court enter an order terminating the Debtors' exclusivity under 11 U.S.C. § 1121 as to the Committee only as of July 1, 2023, and granting such further and other relief as the Court finds appropriate under the circumstances.

DATED: June 14, 2023

Respectfully submitted,

RAY QUINNEY & NEBEKER P.C.

By: */s/ Michael R. Johnson*

Michael R. Johnson (7070)
David H. Leigh (9433)
Elaine A. Monson (5523)
36 South State Street, 14th Floor
Salt Lake City, Utah 84111
Tel: (801) 532-1500
Email: mjohnson@rqn.com
Email: dleigh@rqn.com
Email: emonson@rqn.com

*Counsel for the Debtor-In-Possession*

-- and --

MARKUS WILLIAMS YOUNG & HUNSICKER LLC

By: */s/ Lacey S. Bryan*
James T. Markus *(pro hac vice)*
William G. Cross *(pro hac vice)*
Lacey S. Bryan *(pro hac vice)*
1775 Sherman Street, Suite 1950
Denver, Colorado 80203-4505
Telephone (303) 830-0800
Facsimile (303) 830-0809
Email: jmarkus@markuswilliams.com
Email: wcross@markuswilliams.com
Email: lbryan@markuswilliams.com

*Counsel for the Debtor-In-Possession*

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2023, 2023, I electronically filed the foregoing document with the Clerk of Court using CM/ECF system, which sent notification of such filing to the Office of the United States Trustee and all other electronic filing users in this case as follows:

- **James W. Anderson**   jwa@clydesnow.com, gmortensen@clydesnow.com
- **J. Thomas Beckett**   tbeckett@parsonsbehle.com, ecf@parsonsbehle.com;brothschild@parsonsbehle.com
- **Jared E Berg**   jberg@berglawllc.com
- **David P. Billings**   dbillings@fabianvancott.com, mbeck@fabianvancott.com
- **Darwin H. Bingham**   dbingham@scalleyreading.net, cat@scalleyreading.net
- **Matthew M. Boley**   mboley@ck.law
- **Lacey S. Bryan**   lbryan@markuswilliams.com
- **Matthew James Burne**   matthew.burne@usdoj.gov, rinehart.peshell@usdoj.gov,james.gee@usdoj.gov,lindsey.huston@usdoj.gov,rachelle.d.hughes@usdoj.gov,brittany.eichorn@usdoj.gov
- **Ryan C. Cadwallader**   rcadwallader@kmclaw.com, twhite@kmclaw.com
- **Peter A. Cal**   pcal@shermanhoward.com, rneal@shermanhoward.com,efiling@shermanhoward.com
- **Deborah Rae Chandler**   dchandler@aklawfirm.com
- **Joseph M.R. Covey**   jcovey@parrbrown.com, calendar@parrbrown.com;lstumpf@parrbrown.com
- **P. Matthew Cox**   mw@scmlaw.com, ec@scmlaw.com
- **William G. Cross**   wcross@markuswilliams.com, sschaefer@markuswilliams.com;docket@markuswilliams.com;janderson@marksuwilliams.com
- **Kenyon D. Dove**   defaultservices@smithknowles.com
- **Michael Allen Gehret**   mgehret@atllp.com, ymurphy@atllp.com;sirvin@atllp.com; ecf@atllp.com;michael-gehret-6922@ecf.pacerpro.com
- **Douglas D. Gerrard**   dgerrard@gerrard-cox.com
- **John S. Gygi**   john.gygi@sba.gov
- **Jack N. Hardwick**   jhardwick@sommerudall.com
- **Geoffrey A. Heaton**   gheaton@duanemorris.com, dmicros@duanemorris.com
- **Jared Inouye**   jinouye@btjd.com, docketing@btjd.com;cmontoya@btjd.com;kdunn@btjd.com;sruiz@btjd.com
- **Michael R. Johnson**   mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Penrod W. Keith**   penrod.keith@dentons.com, kristin.hughes@dentons.com
- **Peter J. Kuhn**   Peter.J.Kuhn@usdoj.gov, James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Armstrong@usdoj.gov;Brittany.Eichorn@usdoj.gov
- **Reid W. Lambert**   rlambert@strongandhanni.com, cjohnson@strongandhanni.com
- **David H. Leigh**   dleigh@rqn.com, ASanchez@rqn.com;docket@rqn.com

- **James T. Markus**  jmarkus@markuswilliams.com, sschaefer@markuswilliams.com;Docket@markuswilliams.com
- **David W. Newman tr**  david.w.newman@usdoj.gov, Lindsey.Huston@usdoj.gov;James.Gee@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Armstrong@usdoj.gov;Brittany.Eichorn@usdoj.gov
- **Ellen E. Ostrow**  eostrow@foley.com, lbailey@foley.com;ellen-ostrow-4512@ecf.pacerpro.com
- **Douglas A. Oviatt**  doug@cbclaw.com
- **David L. Pinkston**  dlp@scmlaw.com, ec@scmlaw.com;mw@scmlaw.com;intakeclerk@scmlaw.com
- **George W. Pratt**  gpratt@buchalter.com
- **Mark C. Rose**  mrose@mbt-law.com, markcroselegal@gmail.com
- **Jeremy C. Sink**  jsink@kmclaw.com, mcarlson@kmclaw.com
- **Bradley J. Stevens**  bradley.stevens@azag.gov, Bankruptcyunit@azag.gov;michelle.schlosser@azag.gov
- **Landon S. Troester**  ltroester@clydesnow.com
- **Jeffrey L. Trousdale**  jtrousdale@cohnekinghorn.com, mparks@ck.law;apetersen@ck.law
- **United States Trustee**  USTPRegion19.SK.ECF@usdoj.gov
- **Aaron M. Waite**  aaronmwaite@agutah.gov
- **Steven T. Waterman**  waterman.steven@dorsey.com, bingham.karen@dorsey.com,steven-waterman-9367@ecf.pacerpro.com
- **Andrew R. Welch**  awelch@messner.com
- **Melinda Willden tr**  melinda.willden@usdoj.gov, Lindsey.Huston@usdoj.gov;James.Gee@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Armstrong@usdoj.gov;Brittany.Eichorn@usdoj.gov

    /s/ Serina Schaefer
    Serina Schaefer, Legal Assistant for
    Markus Williams Young & Hunsicker LLC

4859-1662-4490, v. 3